# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# FORT MYERS DIVISION

| | |
|---|---|
| **KELLI SMITH**, an individual, <br><br> Plaintiff, <br><br> v. <br><br> **THE FLORIDA GULF COAST UNIVERSITY BOARD OF TRUSTEES**, a political subdivision of the State of Florida, <br><br> Defendant. | CIVIL ACTION <br><br> Case No. 2:23-cv-840 <br><br> Judge: <br><br> Mag. Judge: |

## COMPLAINT AND DEMAND FOR JURY TRIAL

**NOW COMES** the Plaintiff, **KELLI SMITH** ("**SMITH**"), by and through undersigned counsel, and states the following for her Complaint:

### CAUSES OF ACTION

1. This is an action brought under Title VII of the Civil Rights Act of 1964 ("Title VII"), Title IX of the Educational Amendments of 1972, 20 U.S.C. §§1681 et. seq. ("Title IX") and Florida Civil Rights Act ("FCRA") for (1) unlawful gender discrimination in violation of Title VII, (2) unlawful gender discrimination in violation of the FCRA, (3) unlawful retaliation in violation of Title VII, (4) unlawful retaliation in violation of the FCRA, and (v) unlawful retaliation in violation of Title IX.

1

## PARTIES

2. The Plaintiff, **KELLI SMITH** ("**SMITH**") is an individual and at all material times was a resident of Florida employed by the Defendant.

3. The Defendant, **THE FLORIDA GULF COAST UNIVERSITY BOARD OF TRUSTEES** ("FGCU" or "Defendant") was and is a public entity and the duly empowered governing authority for FGCU. FGCU is a public institution of higher education located in Fort Myers, Florida

## JURISDICTION AND VENUE

4. This Court has jurisdiction of this matter under 28 U.S.C. §1331.

5. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367.

6. Venue is proper in the United States District Court for the Middle District of Florida because the Plaintiff worked in, and the Defendant conducts business in, and some or all of the events giving rise to Plaintiff's claims occurred in Lee County, Florida, which is within the Middle District of Florida. Venue is proper in the Fort Myers Division under Local Rule 1.04 since Lee County is within the Fort Myers Division.

7. **SMITH** received her Notice of Right to Sue from United States Equal Employment Opportunity Commission ("EEOC") on or about July 20, 2023. A true and accurate copy of the Notice of Right to Sue is attached as Exhibit 1.

## GENERAL ALLEGATIONS

8. **SMITH** is a female person and began her employment with the Defendant on May 3, 2021.

9. **SMITH** was employed as the Defendant's Chief of Police.

10. **SMITH** always performed her assigned duties in a professional manner and was very well qualified for her position.

11. **SMITH** received good to very good performance reviews until she engaged in statutorily protected activity.

12. Upon beginning her employment, **SMITH** immediately recognized that the Defendant was non-compliant with the Jeanne Clery Disclosure of Campus Security Policy and Crime Statistics Act (Clery Act) and within the first week of employment began expressing her concern about this to the Defendant's leadership.

13. The Clery Act is a federal law that requires colleges to report crimes (including but not limited to dating violence, domestic violence, sexual assault, and stalking) that occur on campus and surrounding off-campus areas, especially if there is an on-going threat or a pattern of crimes.

14. Under the Clery Act, a group of individuals called campus security authorities (including campus policy/security, individuals with a security function, individuals written into campus security policy as someone to whom members of the community should make crime reports, and officials with significant responsibility for

student and campus activities) are required to report Clery Act crimes to the designated crime collection body at the institution.

15. These statistics along with school safety policies are required to be published in an Annual Security Report (ASR), which would be found on a school's website.

16. The Clery Act also requires schools to send timely warnings to the school community when there are known risks to public safety on campus. These risks include sexual assault(s), homicides and auto burglaries among others. Under the Clery Act, institutions like the Defendant must provide victims of dating violence, domestic violence, sexual assault, and stalking with information in writing about options for, available assistance in, and how to request changes to academic, living, transportation, and working accommodations, as well as other protective measures.

17. Similarly, under Title IX, when an institution has actual knowledge of an incident, the Title IX coordinator provides the reporting party with information on supportive measures, which are non-disciplinary, non-punitive, individualized services offered as appropriate, as reasonably available, and without fee or charge.

18. Title IX regulations require educational institutions to address incidents of sexual assault and sexual harassment involving both students and employees.

19. The Defendant was required to issue Clery warnings where a Clery crime was committed, on campus, that was reported to the Defendant and represents a serious or continuing threat to students and employees, but the Defendant was not complying with the Clery mandates.

20. The mandates are institutionally wide requiring other departments like athletics, residence life, Student Conduct (including Greek Life) to notify the Crime Collection Data Center (FGCUPD) of violations in a timely manner to ensure public safety. Should the Department of Education (DOE) conduct an audit a single violation is a fine in excess of $59,000.

21. When **SMITH** began her employment, the Defendant had already had an audit in 2019 by the Department of Education regarding the ASR publication not meeting the requirements.

22. Between August and October 2021, there were several off campus sexual assault reports taken by the surrounding jurisdictions alleging members of the Defendant's fraternities were drugging female students and sexually assaulting them.

23. In most instances, FGCU resident life staff was aware of these assaults but was not notifying the Clery Crime Collection Data Center (FGCUPD of which **SMITH** was the chief) in a timely manner or at all.

24. This failure to notify created a public safety threat to any of the Defendant's female students attending fraternity parties and being potentially drugged and assaulted.

25. FGCUPD could not evaluate if there was a community threat to students and female employees without the notification.

26. **SMITH** notified the Defendant and FGCU's General Counsel that she was concerned the Defendant was violating Clery by failing to have proper reporting

that would protect the community – and particularly females – from sexual harassment, assault and violence.

27. A meeting was held on November 19, 2021 with Defendant's leadership, including all of FGCU General Counsel, Title IX, and 2 members of the President's Cabinet. **SMITH** was also present.

28. During that meeting, **SMITH** expressed her concerns about the Defendant's Clery noncompliance since it was not doing enough to prevent sexual harassment, assault and violence against female students and employees were dismissed, even though sexual harassment includes sexual assault, dating violence, domestic violence, or stalking as those offenses are defined in the Clery Act, 20 U.S.C. § 1092(f), and the Violence Against Women Act, 34 U.S.C. § 12291(a)).

29. Internally in the Police Department, **SMITH** was requiring staff to become more Clery compliance-focused and to begin writing reports and documenting incidents so that students and employees were protected and the law was complied with, but this was not well-received by the Defendant.

30. **SMITH** also recommended that a Clery compliance subject matter expert be brought into train Defendant's employees since the DOE had already examined the Defendant's lack of compliance in 2019.

31. On January 21, 2022, an email was sent by Sara Stensrud to FGCU General Counsel and Presidential Cabinet Member Vee Leonard explaining **SMITH**'s recommendation of an external Clery compliance subject matter expert for

institutional training and the need to "reset [Defendant's] thoughts on Clery compliance."

32. Ms. Leonard replied that **SMITH** had overstepped by making such a suggestion and by reaching out to legal counsel.

33. However, **SMITH** still continued to advocate for this training and continued to keep it on the agenda for her meetings with her supervisor up through her termination. This included **SMITH**'s final formal agenda on March 22, 2022 listing Clery compliance as a matter for discussion.

34. However, the Defendant refused, and at one point a supervisor stated, "we all know about the 2019 audit and it's old news."

35. But **SMITH** repeatedly expressed her concern for the Defendant's failure to comply with the Clery Act and that it was putting the Defendant's female students and employees at risk, which is a violation of Title IX.

36. Additionally, on March 9, 2022, five (5) white male officers went directly to the President to complain about morale as the officers were being required to do more to ensure Clery compliance and accountability among other things.

37. These officers went above the Chief of Police (**SMITH**, a white female), the Associate Vice President (white female), and Vice President (hispanic male) to the Defendant's President (white male). When **SMITH** was notified by VP Vazquez and AVP Stensrud that the white male officers went to the President to complain about

7

morale, Stensrud advised her that this was part of the "boys club" and pointed in an upward motion towards the President's office.

38. Subsequently, one captain was made interim Chief of Police and one of the other white males was promoted to interim lieutenant.

39. Four of the five white males have been assigned more favorable shifts allowing for (3) day weekends, salary increases or both, while other department members were not afforded the same opportunities. The Defendant's sworn UPD leadership is now all white males.

40. Furthermore, **SMITH** had raised objections as to Captain Rispoli, who was assigned to conduct an internal investigation on November 10, 2021 on Officers William Winning (white male) and Christopher Palmer (white male).

41. The Office of Student Conduct informed **SMITH** that they learned of a statement in which an FGCU Officer made the comment "Which one of you is Jackie Chan" to students in a car with Nunchucks. The Office Conduct staff advised that even though none of the students were Asian, this comment was unprofessional and inappropriate. He was assigned this task due to a personal relationship that Captain Slapp had with Officer Palmer. Officer Palmer's family company was doing a large-scale pool job for Captain Slapp. Captain Rispoli expressed his frustration at being assigned to conduct this type of investigation. He was registered to go to training but withdrew from it.

42. Within days of the officers being notified that they were under investigation, **SMITH** would come into the women's restroom to find feces and urine in the toilet. Urine would also be on the seat.

43. **SMITH** was typically always the first person in the women's restroom at 7:30 A.M.

44. **SMITH** evaluated when this would occur and it aligned with the shift rotation of Officer Palmer and Officer Winning. UPD and janitorial staff were the only ones with access to this bathroom at night.

45. **SMITH** informed AVP Stensrud this was occurring and that **SMITH** had even bought cleaning supplies and placed a sign in the women's restroom encouraging cleanliness.

46. **SMITH** spoke with Captain Slapp and Captain Rispoli who began checking the men's restroom each morning, but it was always found clean.

47. **SMITH** addressed this issue with the sergeants on a November 30, 2021 meeting and the sergeants addressed their squads and were to begin checking the bathrooms before the end of the shift.

48. In early December 2021, while Captain Rispoli was conducting the investigation, he made a biased based statement and was issued a verbal counseling. He told a dark complected officer of Dominican national origin wearing a lime green shirt that he looked like a landscaper. This comment along with the investigation indicated that FGCUPD at minimum demonstrated implicit bias at the highest level

of rank, but it appeared to be deeper than that with what was occurring in the women's restroom. **SMITH** expressed this to AVP Stensrud in many of their conversations.

49. On March 29, 2022, the Defendant terminated **SMITH**'s employment.

50. The Defendant replaced **SMITH** with a white male.

51. **SMITH** had always received good to very good performance reviews from the Defendant including a $10,000 a year pay increase 23-days prior to her termination.

52. Due to the countless times that **SMITH** expressed her concern about lack of Clery Compliance (and gender-based harassment), including just prior to her termination, she was subsequently terminated on March 29, 2022.

## COUNT I – VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, GENDER DISCRIMINATION

53. Plaintiff incorporates by reference Paragraphs 1-11 and 36-52 of this Complaint as though fully set forth below.

54. **SMITH** is a female and as such, is a member of a protected class.

55. At all material times, **SMITH** was an employee and the Defendant was her employer covered by and within the meaning of Title VII of the Civil Rights Act of 1963, 42 U.S.C §2000e.

56. **SMITH** was, and is, qualified for the positions that she held with the Defendant.

57. **SMITH** has endured disparate treatment while employed with the Defendant, thereby altering the terms and conditions of her employment.

58. The acts, failures to act, practices and policies of the Defendant set forth above constitute intentional discrimination on the basis of **SMITH**'s gender in violation of Section 703 of Title VII, 42 U.S.C. § 2000e-2.

59. As a direct and proximate result of the violations of 42 U.S.C. § 2000e et seq. as referenced and cited herein, **SMITH** has lost benefits and privileges of her employment and has been substantially and significantly injured in her career path.

60. As a direct and proximate result of the violations of 42 U.S.C. § 2000e et seq. as referenced and cited herein, and as a direct and proximate result of the prohibited acts perpetrated against her, **SMITH** is entitled to all relief necessary to make her whole as provided for under 42 USC § 2000e et seq.

61. As a direct and proximate result of the Defendant's actions, **SMITH** has suffered damages, including but not limited to, a loss of employment opportunities, loss of past and future employment income and fringe benefits, humiliation, and non-economic damages for physical injuries, mental and emotional distress.

62. **SMITH** has exhausted her administrative remedies and this count is timely brought.

**WHEREFORE**, Plaintiff requests trial by jury of all issues so triable as of right, and:

i. Back pay and all other benefits, perquisites and other compensation for employment which plaintiff would have received, plus interest, including but not limited to lost salary and bonuses;

    ii.      Front pay, including raises, benefits, insurance costs, benefits costs, and retirement benefits;

    iii.     Reimbursement of all expenses and financial losses Plaintiff has incurred as a result of Defendant's actions;

    iv.     Reasonable attorney's fees plus costs;

    v.      Compensatory damages, and;

    vi.     Such other relief as this Court shall deem appropriate.

## COUNT II – VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992, GENDER DISCRIMINATION

63. Plaintiff incorporates by reference Paragraphs 1-11 and 36-52 of this Complaint as though fully set forth below.

64. **SMITH** is a female and as such, is a member of a protected class.

65. At all material times, **SMITH** was an employee and the Defendant was her employer covered by and within the meaning of the FCRA.

66. **SMITH** was, and is, qualified for the positions that she held with the Defendant.

67. **SMITH** has endured disparate treatment while employed with the Defendant, thereby altering the terms and conditions of her employment.

68. The acts, failures to act, practices and policies of the Defendant set forth above constitute intentional discrimination on the basis of **SMITH**'s gender in violation of the FCRA.

69. As a direct and proximate result of the violations of the FCRA as referenced and cited herein, **SMITH** has lost benefits and privileges of her employment and has been substantially and significantly injured in her career path.

70. As a direct and proximate result of the violations of the FCRA as referenced and cited herein, and as a direct and proximate result of the prohibited acts perpetrated against her, **SMITH** is entitled to all relief necessary to make her whole as provided for under the FCRA.

71. As a direct and proximate result of the Defendant's actions, **SMITH** has suffered damages, including but not limited to, a loss of employment opportunities, loss of past and future employment income and fringe benefits, humiliation, and non-economic damages for physical injuries, mental and emotional distress.

72. **SMITH** has exhausted her administrative remedies and this count is timely brought.

**WHEREFORE**, Plaintiff requests trial by jury of all issues so triable as of right, and:

   ii. Back pay and all other benefits, perquisites and other compensation for employment which plaintiff would have received, plus interest, including but not limited to lost salary and bonuses;

   iii. Front pay, including raises, benefits, insurance costs, benefits costs, and retirement benefits;

    iv.    Reimbursement of all expenses and financial losses Plaintiff has incurred as a result of Defendant's actions;

    v.    Reasonable attorney's fees plus costs;

    vi.    Compensatory damages, and;

    vii.    Such other relief as this Court shall deem appropriate.

## COUNT III – VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964- RETALIATION

73. Plaintiff incorporates by reference Paragraphs 1-11 and 36-52 of this Complaint as though fully set forth below.

74. **SMITH** is a female a person and, as such, is a member of a protected class.

75. At all material times, **SMITH** was an employee and the Defendant was her employer covered by and within the meaning of Title VII of the Civil Rights Act of 1963, 42 U.S.C §2000e.

76. **SMITH** was qualified for the positions that she held with the Defendant.

77. **SMITH** complained to the Defendant about the gender discrimination and retaliation, and the Defendant clearly observed her growing discomfort concerning the same.

78. **SMITH**'s complaints constitute a protected activity because her complaints were concerning an unlawful activity of the Defendant.

79. Said protected activity was the proximate cause of the Defendant's negative employment actions against **SMITH**.

80. Instead of preventing said treatment, the Defendant retaliated against **SMITH**.

81. The acts, failures to act, practices and policies of the Defendant set forth above constitute retaliation in violation of Section 703 of Title VII, 42 U.S.C. § 2000e-2.

82. As a direct and proximate result of the violations of 42 U.S.C. § 2000e et seq., as referenced and cited herein, **SMITH** has lost all of the benefits and privileges of her employment and has been substantially and significantly injured in her career path.

83. As a direct and proximate result of the violations of 42 U.S.C. § 2000e et seq., as referenced and cited herein, and as a direct and proximate result of the prohibited acts perpetrated against her, **SMITH** is entitled to all relief necessary to make her whole as provided for under 42 USC § 2000e et seq.

84. As a direct and proximate result of the Defendant's actions, **SMITH** has suffered damages, including but not limited to, a loss of employment opportunities, loss of past and future employment income and fringe benefits, humiliation, and non-economic damages for physical injuries, mental and emotional distress.

85. **SMITH** has exhausted her administrative remedies and this count is timely brought.

**WHEREFORE**, Plaintiff requests trial by jury of all issues so triable as of right, and:

     i.     Back pay and all other benefits, perquisites and other compensation for employment which plaintiff would have received, plus interest, including but not limited to lost salary and bonuses;

     ii.     Front pay, including raises, benefits, insurance costs, benefits costs, and retirement benefits;

     iii.     Reimbursement of all expenses and financial losses Plaintiff has incurred as a result of Defendant's actions;

     iv.     Reasonable attorney's fees plus costs;

     v.     Compensatory damages, and;

     vi.     Such other relief as this Court shall deem appropriate.

**COUNT IV – VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992- RETALIATION**

86.    Plaintiff incorporates by reference Paragraphs 1-11 and 36-52 of this Complaint as though fully set forth below.

87.    **SMITH** is a female a person and, as such, is a member of a protected class.

88.    At all material times, **SMITH** was an employee and the Defendant was her employer covered by and within the meaning of the FCRA.

89.    **SMITH** was qualified for the positions that she held with the Defendant.

90.    **SMITH** complained to the Defendant about the gender discrimination and retaliation, and the Defendant clearly observed her growing discomfort concerning the same.

91. **SMITH**'s complaints constitute a protected activity because her complaints were concerning an unlawful activity of the Defendant.

92. Said protected activity was the proximate cause of the Defendant's negative employment actions against **SMITH**.

93. Instead of preventing said treatment, the Defendant retaliated against **SMITH**.

94. The acts, failures to act, practices and policies of the Defendant set forth above constitute retaliation in violation of the FCRA.

95. As a direct and proximate result of the violations of the FCRA, as referenced and cited herein, **SMITH** has lost all of the benefits and privileges of her employment and has been substantially and significantly injured in her career path.

96. As a direct and proximate result of the violations of the FCRA, as referenced and cited herein, and as a direct and proximate result of the prohibited acts perpetrated against her, **SMITH** is entitled to all relief necessary to make her whole as provided for under the FCRA.

97. As a direct and proximate result of the Defendant's actions, **SMITH** has suffered damages, including but not limited to, a loss of employment opportunities, loss of past and future employment income and fringe benefits, humiliation, and non-economic damages for physical injuries, mental and emotional distress.

98. **SMITH** has exhausted her administrative remedies and this count is timely brought.

**WHEREFORE**, Plaintiff requests trial by jury of all issues so triable as of right, and:

i. Back pay and all other benefits, perquisites and other compensation for employment which plaintiff would have received, plus interest, including but not limited to lost salary and bonuses;

ii. Front pay, including raises, benefits, insurance costs, benefits costs, and retirement benefits;

iii. Reimbursement of all expenses and financial losses Plaintiff has incurred as a result of Defendant's actions;

iv. Reasonable attorney's fees plus costs;

v. Compensatory damages, and;

vi. Such other relief as this Court shall deem appropriate.

### COUNT V – VIOLATION OF TITLE IX – RETALIATION

99. Plaintiff incorporates by reference Paragraphs 1-35 and 49-52 of this Complaint as though fully set forth below.

100. **SMITH** is a female a person and, as such, is a member of a protected class.

101. At all material times, **SMITH** was an employee and the Defendant was her employer.

102. **SMITH** was qualified for the positions that she held with the Defendant.

103. **SMITH** complained to the Defendant about its violations of Title IX, and the Defendant clearly observed her growing discomfort concerning the same.

104. **SMITH**'s complaints constitute a protected activity because her complaints were concerning an unlawful activity of the Defendant.

105. Said protected activity was the proximate cause of the Defendant's negative employment actions against **SMITH**.

106. Instead of preventing said treatment, the Defendant retaliated against **SMITH**.

107. The acts, failures to act, practices and policies of the Defendant set forth above constitute retaliation in violation of Title IX.

108. As a direct and proximate result of the violations of Title IX, as referenced and cited herein, **SMITH** has lost all of the benefits and privileges of her employment and has been substantially and significantly injured in her career path.

109. As a direct and proximate result of the violations of Title IX, as referenced and cited herein, and as a direct and proximate result of the prohibited acts perpetrated against her, **SMITH** is entitled to all relief necessary to make her whole as provided for under Title IX.

110. As a direct and proximate result of the Defendant's actions, **SMITH** has suffered damages, including but not limited to, a loss of employment opportunities, loss of past and future employment income and fringe benefits, humiliation, and non-economic damages for physical injuries, mental and emotional distress.

**WHEREFORE**, Plaintiff requests trial by jury of all issues so triable as of right, and:

i. Back pay and all other benefits, perquisites and other compensation for employment which plaintiff would have received, plus interest, including but not limited to lost salary and bonuses;

ii. Front pay, including raises, benefits, insurance costs, benefits costs, and retirement benefits;

iii. Reimbursement of all expenses and financial losses Plaintiff has incurred as a result of Defendant's actions;

iv. Reasonable attorney's fees plus costs;

v. Compensatory damages, and;

vi. Such other relief as this Court shall deem appropriate.

## DEMAND FOR JURY TRIAL

The Plaintiff demands a jury trial under Federal Rule of Civil Procedure 38 on all issues triable of right by a jury in this action.

Respectfully submitted,

Dated: October 5, 2023

**/s/ Benjamin H. Yormak**
Benjamin H. Yormak
Florida Bar Number 71272
Lead Counsel for Plaintiff
Yormak Employment & Disability Law
27200 Riverview Center Blvd, Suite 109
Bonita Springs, Florida 34134
Telephone: (239) 985-9691
Fax: (239) 288-2534
Email: byormak@yormaklaw.com