

| | **FGCU POLICY 1.002** | **Responsible Unit**: |
|---|---|---|
| | **Retention of External Legal Counsel** | Office of the General Counsel |

## A. POLICY STATEMENT

The General Counsel shall be responsible for the provision of all legal advice, counsel, and representation for matters involving the University or matters within the official responsibilities of any officer or employee of the University. External legal counsel may be retained only through the General Counsel and, where appropriate, to protect the University's legal interests. All contact with external counsel shall be under the auspices and at the direction of the General Counsel. The General Counsel shall review and, when appropriate, approve all invoices or requests for payment from external legal counsel.

## B. REASON FOR POLICY

The purpose of this Policy is to set out the authority, criteria, and process for the retention and compensation of external legal counsel.

## C. APPLICABILITY AND/OR ACCOUNTABILITY

The following individuals should be familiar with this Policy:

1. Deans, Directors, and department heads;

2. Unit administrators;

3. Faculty; and



4. Individuals considering hiring or retaining legal counsel to represent the University.

## D. DEFINITION OF TERMS

1. *General Counsel*: The term "General Counsel" shall include any assistant or associate general counsels authorized or requested by the General Counsel to act on his or her behalf.

2. *University*: The term "University" in this Policy includes the University as a public body corporate, and its direct support organizations of the Florida Gulf Coast University Foundation, Inc. and the Florida Gulf Coast University Financing Corporation.

## E. PROCEDURES

1. Normally, external legal counsel shall be engaged only for those matters that require specialized expertise. Requests for retention of external legal counsel shall be made in writing to the General Counsel by or through a vice president or other senior University administrator.

2. In overseeing an external legal counsel's representation, the General Counsel shall ensure:

   a. That outside counsel is accountable for the cost effective management of the assigned legal matter;

   b. That outside counsel devotes the time and skill level appropriate to the tasks at hand;

   c. That outside counsel's fees, costs, and disbursements are reasonable and are submitted for payment in writing;

   d. That outside counsel complies with applicable rules of professional conduct and the highest ethical standards;

   e. That outside counsel submits legal documents for review, as requested by the General Counsel, sufficiently in advance for meaningful review prior to filing or service; and

   f. That outside counsel provides the General Counsel with all significant documents and court rulings related to assigned legal matters.

3. The General Counsel, in consultation with the appropriate vice president or other senior University administrator, shall approve all major strategic and tactical decisions in legal matters.

4. This Policy does not contravene the authority of the members of the Florida Gulf Coast University Board of Trustees, the Florida Gulf Coast University Foundation Board of Directors, and the Florida Gulf Coast University Financing Corporation Board of Directors, to retain outside counsel under appropriate circumstances via approval of a corporate resolution so specifying.

*Authority*
   *BOG Regulation 1.001, University Board of Trustees Powers and Duties*

*History of Policy*
   *New 12/13/05; Format Changed 09/10/19; Reviewed 12/22/20*

**APPROVED**

    \*s/William C. Merwin                  December 13, 2005
William C. Merwin, President             Date

001956



**FLORIDA GULF COAST UNIVERSITY POLICY**

**Policy Number:** 1.006
**Policy Title:** Non-Discrimination, Anti-Harassment, and Sexual Misconduct
**Responsible Office:** Office of Institutional Equity and Compliance
**Effective Date:** 12/19/16

## A.  POLICY STATEMENT

1. Florida Gulf Coast University (University) is committed to maintaining a respectful, fair educational and work environment, free from discrimination or harassment. The goal of the University is to prevent discrimination or harassment from occurring and to provide a means of raising and resolving complaints promptly and effectively. The University does not discriminate on the basis of race, color, religion, age, disability, sex, national origin, marital status, genetic predisposition, sexual orientation, gender identity/gender expression, or veteran status as required by applicable state and federal law, as well as University regulations and policies. Therefore, members of the University community have the right to file complaints of discrimination, harassment, and sexual misconduct. Complaint investigations will be conducted in a fair, respectful, and consistent manner. The University strictly prohibits and will not tolerate retaliation against any individual due to their participation in this process or any other protected activity. A claim of retaliation shall be treated as a separate allegation of discrimination. If the University discovers discrimination or harassment, the University will take affirmative steps to eliminate the discrimination or harassment, remedy its effects, and prevent its recurrence.

2. The informal and formal procedures set forth below are intended to afford a prompt response to charges of discrimination, harassment, sexual misconduct, intimate partner violence, and stalking. The provisions herein are also established to maintain confidentiality and fairness consistent with applicable legal requirements.

## B.  REASON FOR POLICY

This Policy provides procedures whereby members of the University community, including employees, students, and third party vendors, may file complaints of alleged discrimination, harassment, sexual misconduct, and retaliation. This policy further outlines the procedures used to investigate such complaints pursuant to FGCU-PR1.003, Non-Discrimination, Anti-Harassment, and Sexual Misconduct Regulation and in compliance with applicable federal, state, and local laws, as well as lawful orders and University regulations.

Note: While this Policy also addresses investigations of sexual misconduct covered by Title IX, students involved in such investigations may also be interviewed by the Office of Student Conduct within the Division of Student Affairs. Additionally, the Student

Code of Conduct will also be applied to students involved in allegations of violations of this policy and its related regulation.

**C.    APPLICABILITY AND/OR ACCOUNTABILITY**

This Policy is applicable to out-of-unit faculty, staff, students, vendors, contractors, guests, patrons, and other third parties participating in any FGCU-sponsored event or program. As for in-unit faculty covered by a collective bargaining agreement, and consistent with Article 6.2 C., investigations based on allegations of discrimination, harassment, or sexual misconduct will proceed consistent with Section V, Paragraph D of this Policy.

**D.    DEFINITION OF TERMS**

1. *Complainant(s):* A person or persons alleging violations of FGCU-PR1.003, which includes allegations of violation(s) of Title IX of the Education Amendments Act of 1972 (Title IX).

2. *Complaint*: Allegations of a violation(s) of University Regulation, FGCU-PR1.003.

3. *Consent*: The mutual assent by words or actions to engage in a particular sexual activity that must be made voluntarily and competently by all parties.

   a) In order for consent to be given voluntarily, it must be free from threat, force, intimidation, extortion, and/or undue influence.

   b) In order for consent to be given competently, both parties must have the capacity to consent. If one of the parties is incapacitated due to, among other things, drug or alcohol use, then that person lacks the necessary capacity, and thus the competency required to consent.

4. *Days*: Calendar days. University holidays (i.e., days when the University is closed) are excluded from the computation of time. If the time ends on a Saturday or Sunday, the deadline is extended to the following University business day.

5. *Decision Maker*: The President, Vice President, President's Direct Report or their designee(s) in the Respondent's chain of command, or Dean of Students, where applicable.

6. *Deputy Title IX Coordinator(s)*: A University employee designated to assist in the administration of the responsibilities related to Title IX matters.

7. *Discrimination*: The intentional or unintentional treatment of any member of the University community less favorably than those who are similarly situated based upon race, color, religion, age, disability, sex, national origin, marital status, genetic

predisposition, sexual orientation, gender identity/gender expression, and/or veteran status.

8. *Harassment*: Unwelcome conduct, including electronic and written communication, that is based upon race, color, religion, age, disability, sex, national origin, marital status, genetic predisposition, sexual orientation, gender identity/gender expression, and/or veteran status. Harassment is further defined as behavior so severe, pervasive, or persistent that it limits a student's ability to participate in or benefit from an educational program, undermines the responsibilities of the employee, and/or creates a hostile working or learning environment.

9. *Intimate Partner*: Persons who are or who have been dating, cohabitating, married, separated, or divorced, and may be of the same or opposite sex.

10. *Intimate Partner Violence (Also known as "dating violence" or "domestic violence")*: The use of physical violence, force, threats, intimidation, isolation, stalking, or other forms of emotional, sexual, or economic abuse directed towards an Intimate Partner. This can take the form of behavior(s) that intimidates, manipulates, humiliates, isolates, frightens, terrorizes, forces, threatens, blames, hurts, injures, or wounds someone. Intimate Partner Violence can be a single act or a pattern of behavior in relationships.

11. *Investigative Report*: The report created by the Investigator which includes: a summary of the complaint; description of the investigation, to include names of persons interviewed with dates, list of documents reviewed, and findings to include whether or not the allegation(s), more likely than not, took place; and, if at issue, whether the complaint was frivolous, knowingly false, malicious or retaliatory. Certain information may be redacted in accordance with applicable law.

12. *Investigator*: OIEC Director, or trained person designated as an Investigator by the OIEC Director or the Vice President and General Counsel, who conducts a fact-finding inquiry (investigation) and writes an Investigative Report.

13. *OIEC*: Office of Institutional Equity and Compliance.

14. *OIEC Director*: University employee responsible for the administration of this Policy and its corresponding Regulation, which includes compliance with Title IX.

15. *Protected Activity:* Activity which is protected by federal or state law or regulation, and includes but is not limited to participation in a University investigation, the filing of a complaint in good faith, filing a claim for worker's compensation, taking FMLA leave, or any of the federally protected activities delineated in 18 U.S.C. § 245.

16. *Respondent(s)*: A person or persons whose conduct is the subject of a complaint under FGCU-PR1.003.

17. *Responsible Employee*: An employee who has the authority to take action to redress the alleged misconduct, who has the duty to report the alleged misconduct to appropriate University officials, or an individual who would reasonably be believed to have the authority or responsibility to redress or report the alleged misconduct.

18. *Retaliation*: When an officer, agent, employee, student, contractor, vendor, or other third party takes an **adverse action** against an individual for his or her participation in Protected Activity. This includes but is not limited to action taken against a bystander who intervened to stop or attempt to stop discrimination, harassment, or sexual misconduct. Retaliation includes intimidating, threatening, coercing, or in any way discriminating against an individual because of the individual's complaint or participation in Protected Activity.  For purposes of this policy as it relates to Retaliation based on Protected Activity, examples of adverse action include: firing, denial of a promotion, lowering a grade, unjustified negative performance evaluations and reports, increased supervision or scrutiny, sudden enforcement of previously unenforced policies, exclusion from activities or privileges open to others, or any other action that would deter a reasonable person in the same circumstances from filing a complaint or engaging in Protected Activity.

19. *Sexual Harassment*: Unwelcome conduct of a sexual nature including unwelcome sexual attention, which includes requests for sexual favors, and other verbal or physical conduct of a sexual nature from any person that is so severe, pervasive, or persistent that it limits a student's ability to participate in or benefit from an educational program, undermines the responsibilities of the employee, and/or creates a hostile working or learning environment. Sexual violence is a form of sexual harassment.

20. *Sexual Misconduct*:

    a) An actual or attempted act of rape, sexual assault, sexual battery, sexual exploitation and other forms of non-consensual sexual activity.

    b) Sexual exploitation is an act that exploits someone sexually. Examples of sexual exploitation include, but are not limited to:

        1) Exposing one's own or another person's intimate parts without consent;

        2) Recording video or audio, photographing, or transmitting intimate or sexual utterances, sounds, or images without consent of all parties involved;

        3) Allowing others to view sexual acts (whether in person or via a video camera or other recording device) without the consent of all parties involved; or

        4) Engaging in any form of voyeurism.

21. *Stalking*: The repeated following, harassing, threatening, or intimidating of another by any action, including but not limited to use of telephone, mail, electronic communication, social media, or any other device or method that purposely or knowingly causes substantial emotional distress or reasonable fear of bodily injury or death.

22. *Title IX Coordinator*: The University employee responsible for administering a Title IX related centralized complaint filing process which includes investigating complaints of gender inequity and/or sexual misconduct as defined in FGCU-PR1.003, analyzing trends, and monitoring overall compliance with this policy as it relates to Title IX compliance and related federal, state or local legislation and regulations. The OIEC Director also serves as the Title IX Coordinator. The definition also encompasses a Deputy Title IX Coordinator.

23. *University*: Florida Gulf Coast University (FGCU).

24. *Vendor or Contractor*: Individual or business entity in a contractual relationship with the University, but not an employee.

**E.    PROCEDURES**

1. Filing a Complaint

   a) An individual alleging  an action covered under this policy may file a complaint with the OIEC Director by informing him or her of the alleged wrongdoing. Generally, allegations should be raised within ninety (90) days of the last act of alleged Discrimination or Harassment, or within ninety (90) days from becoming aware of the alleged act, unless the Complaint alleges sexual misconduct. A Complainant completes a Complaint Form made available by the OIEC.

   b) A Complaint may also be initiated by referral from the Division of Student Affairs, any other Responsible Employee, as well as by filing a complaint through the Florida Gulf Coast University EthicsPoint Hotline.

   c) The absence of a completed Complaint form does not negate initiation of an investigation.

   d) Any necessary correspondence will be provided to the Complainant and Respondent at the address designated by the Complainant and Respondent during the Complaint procedure. Notwithstanding, the parties may also utilize additional methods of communication, including electronic communication. If a mailing address or an email address is not provided, the OIEC Director may use an address on file with the University, or the best address available.

   e) At any time throughout the process, the OIEC Director may grant the Complainant, Respondent, Investigator, or Decision Maker an extension as is

reasonably necessary, and will communicate any extensions in writing to the parties. This provision is not intended to conflict with the Student Code of Conduct.

2. Informal Procedure

   a) Informal resolution of a Complaint may be sought when the parties desire to resolve the situation cooperatively. Notwithstanding, allegations of sexual assault will not be resolved informally or be the subject of an alternative method of dispute resolution.

   b) Before pursuing the formal procedure a Complainant may seek informal resolution through the OIEC Director by making a written request for informal resolution to the Complaint.

   c) If the Complainant has utilized the informal procedure but the matter has not been informally resolved within thirty (30) days of its submission to the OIEC Director, the Complainant must communicate to the OIEC Director whether or not he or she wishes to proceed with the formal procedure.

   d) The Complainant has fourteen (14) days from the date of the communication from the OIEC Director that the informal procedure has concluded without resolution, to notify the OIEC Director of his or her decision to move forward with the formal procedure. Failure to communicate with the OIEC Director may result in no further action by the University and the closure of the Informal Resolution request. However, if circumstances warrant investigation into the matter, the OIEC Director or Investigator may proceed with an investigation.

   e) If a Complainant believes that a Complaint cannot be resolved utilizing alternative dispute resolution, a Complainant may forego the informal procedure and go directly to the formal procedure.

3. Formal Procedure

   a) After the Complainant notifies the OIEC Director that he or she wishes to proceed to the formal procedure, the Complainant should complete the Complaint Form and submit it to the OIEC Director who will initiate an investigation.

   b) 1)  The formal procedure cannot be utilized when a Complainant fails to make allegations, which constitute a violation of FGCU-PR1.003. When a Complainant fails to allege sufficient facts to indicate a violation may have occurred, such Complaint shall be dismissed in writing by the OIEC Director and the dismissal shall be sent to the Complainant via a form of verifiable delivery, which may include hand delivery. A dismissal for failure to allege sufficient facts to substantiate a violation of the FGCU-PR1.003 is the final University decision,

unless additional facts are submitted sufficient to indicate a violation may have occurred.

2) A final University action under this policy involving a Student Respondent will come from the Division of Student Affairs.

c) Notwithstanding the provisions of the formal procedure, all allegations of violations of Title IX will be investigated to the extent an investigation is possible.

4. Investigation

a) The OIEC Director or the Vice President and General Counsel investigates, or assigns a trained Investigator to initiate an investigation.

b) An Investigator will complete the investigation as promptly as possible, but no later than sixty (60) days from the date of receipt of the Formal Complaint unless there are extenuating circumstances. In such a case, notice, along with reasons for the extension, shall be provided to the parties with the amount of time the investigation shall be extended.

c) In the case of investigations of allegations of Sexual Misconduct, the OIEC Director, as Title IX Coordinator, will coordinate his or her investigation with the appropriate University departments involved to ensure the Complainant is interviewed in a collaborative manner.

d) In the event that a complaint of Discrimination or Harassment is filed against the OIEC, an investigation will be conducted by an Investigator external to the University.

e) When an external third party is the named Complainant or Respondent, the OIEC Director shall consult with the appropriate University department concerning the investigation. In such cases, the Decision Maker shall be the President, appropriate Vice President, or designee.

f) 1) Upon receiving a report under this Policy from the Complainant, the Investigator assigned to address the allegations notifies the Respondent that a Complaint has been filed against him or her and informs him or her of the nature of the Complaint. The Investigator shall explain to both the Complainant and the Respondent the informal and formal procedures, including a description of the process, the relevant avenues of redress, and provide them with a copy of this Policy.

2) The OIEC Director shall confer with the appropriate University officials to ensure that, if warranted, interim measures are pursued to protect both parties pending completion of the matter.

g) The Respondent will be afforded an opportunity to provide a response to the allegations. Moreover, both parties will have the opportunity to present witnesses and other evidence for consideration.

h) All persons involved with the investigation are cautioned that retaliation is strictly prohibited. It is imperative that matters discussed during the investigation are kept confidential in order that the fact-finding nature of the investigation is in no way hindered or impaired. Investigations encompass, but are not limited to, witness interviews, the gathering of documentation and other evidence, as well as other investigative techniques deemed appropriate by the Investigator. All members of the University community are expected to cooperate with an investigation. Failure to do so could result in disciplinary action. This provision is not intended to conflict with any provision of Title IX or other applicable federal and state law(s).

i) Any person interviewed by an Investigator as part of an investigation will be permitted to be accompanied by legal counsel, a union representative, or a support person, if so desired. However, such person's role shall be limited to observation, support, or advice; such support person shall not represent or speak on behalf of the person to whom they are providing support or advice.

j) An investigation is considered concluded when the Investigator provides an Investigative Report to the appropriate Decision Maker with a determination of whether the allegation(s), more likely than not, occurred.

k) A summary of the Investigative Report, including the general basis for the Complaint and the determination, shall be provided to the Complainant and the Respondent.

5. Investigative Report, Determination, and Disciplinary Action

a) Once the Investigative Report has been completed, a copy will be provided to the Decision Maker for a determination as to what, if any, disciplinary action will be imposed. At the same time, or soon thereafter, the Investigative Report, or summary report, will be released to the Complainant and Respondent via certified mail, return receipt requested, hand-delivery (with proof delivery), or any other verifiable method of delivery, including electronic mail.

b) A determination by the Decision Maker as to disciplinary action, if any, will occur within 14 days of the delivery of the Investigative Report, unless the Respondent is covered under a collective bargaining agreement or the Student Code of Conduct. Under those circumstances, the relevant documents will control the imposition of the disciplinary action, if any. If warranted, an extension of time is permitted to reach a determination as to disciplinary action.

   1) The Decision Maker will implement disciplinary action as soon as reasonably practicable, when in his or her judgment it is appropriate. Moreover, the Decision

Maker will attempt to take whatever steps are within his or her control to prevent the recurrence of the offending behavior and to correct its discriminatory effects on the Complainant and others, if appropriate.

2)  The Respondent and the Complainant may, if appropriate, be informed of the disciplinary action to be imposed.

3)  Any discipline to be imposed shall be determined in accordance with the Student Code of Conduct (FGCU PR-4.002) where the Respondent is a student; Disciplinary Actions (FGCU-PR5.016) and related policies where the Respondent is an employee; and a collective bargaining agreement where the Respondent is an in-unit Faculty.

6.  Request for Reconsideration

a)  A person may request reconsideration of the findings made by the Investigator within seven (7) calendar days of receiving the investigative findings. A request for reconsideration of the findings can be made to the Office of the General Counsel.

b)  The reconsideration request must be based on one of the following:

1)  There is new evidence that was not available at the time of the investigation that should be considered; or

2)  The Investigator did not consider all information that was available during the investigation (e.g. did not interview a key witness, did not consider applicable documentation, etc.).

c)  Within seven (7) calendar days of receipt of a request for reconsideration, the General Counsel, or designee, will make one of the following determinations:

1)  The investigation should be remanded to the Investigator for further consideration of the evidence; or

2)  The requestor has not presented information that warrants a review of the investigative findings and thus the investigative findings are final.

d)  The determination as to the request for reconsideration is not a substantive review of the investigation; rather, the reconsideration process is in place to ensure that each party to the investigation is provided full due process.

## F.    MISCELLANEOUS PROVISIONS

1.  After an incident of Sexual Misconduct, Intimate Partner Violence, or Stalking, the individual should consider seeking medical attention and law enforcement assistance

as soon as possible. In circumstances of sexual assault, health care providers can treat injuries and take steps to address concerns of pregnancy or sexually transmitted disease. Although the University strongly encourages all members of its community to report such violations of this Policy to law enforcement, it is the affected individual's choice whether or not to make such a report.

2. As time passes, evidence may dissipate or become lost or unavailable, thereby making investigation, possible prosecution, disciplinary proceedings, or obtaining protection from abuse through the use of a protective order related to the incident, more difficult. If an individual suffering from an incident covered by this Policy chooses not to make a complaint regarding the incident, he or she nevertheless should consider speaking with the University Police Department or other law enforcement agencies to preserve evidence in the event the individual reconsiders the decision not to make a Complaint.

3. Regardless of whether criminal charges are filed, allegations under this policy may also be heard through the Student Code of Conduct Regulation (FGCU-PR4.002) where a student is the accused.

4. The Director of the OIEC is the custodian of filed records associated with the investigation of complaints under FGCU-PR1.003.

5. The University may utilize the procedure articulated in this Policy to address investigations in general. If this process is used for an investigation involving something other than discrimination, harassment, or sexual misconduct, the processes may be modified, to some extent, on a case by case basis. Additionally, the time frames for actions may be modified and extended as warranted.

## G.    RESOURCES

1. The University will provide resources to support persons who have made allegations of Sexual Assault, Intimate Partner Violence or Stalking. Regardless of whether a person who reports such allegations elects to pursue a criminal complaint, the University will assist persons alleging Sexual Misconduct, Intimate Partner Violence, and Stalking. To the extent cooperation and consent are provided, University offices, including the University Police Department (UPD), Counseling and Psychological Services (CAPS), the Student Health Services (SHS), and the Case Manager for Student Affairs will work cooperatively to ensure that the Complainant's health, physical safety, academic status, and employment status are protected, pending the outcome of a formal university investigation of the allegations. For example, if reasonably available and as applicable, a Complainant may be offered changes to his or her work environment, academic schedule or university-provided housing, in addition to counseling, health services and assistance in notifying appropriate local law enforcement.

2.  a)  If requested, within CAPS and SHS, resources are available to provide support to students. Additionally, the Case Manager in Student Affairs can coordinate assistance and support related to a student's physical and mental health, personal safety, and academic status. For its employees, the University offers assistance through the Employee Assistance Program. Also, protection from abuse through the use of protective orders may be available through the court system.

b)  The Office of the Dean of Students offers assistance in navigating the conduct process to accused and/or charged Students.

c)  Other resources available related to Sexual Misconduct, Intimate Partner Violence, or Stalking include:

1)  Abuse, Counseling and Treatment of Fort Myers: http://www.actabuse.com/
2)  Assault and Rape Information, Support and Education (ARISE): http://www.fgcu.edu/arise/
3)  Congreso (multiservice organization focused on Latino Communities): http://www.congreso.net/site/
4)  Department of Justice: http://www.justice.gov/ovw/sexual-assault
5)  Florida Coalition Against Domestic Violence: http://www.fcadv.org/
6)  Florida Counsel Against Sexual Violence: http://www.fcasv.org/
7)  Project Help of Naples: http://projecthelpnaples.org/

*Related Information*
FGCU-PR1.003, Non-Discrimination, Anti-Harassment, and Sexual Misconduct
FGCU-PR4.002, Student Code of Conduct and Student Conduct Review Process
FGCU-PR5.016, Disciplinary Actions
FGCU-PR5.020, Grievance Regulation
FGCU Policy 1.007, Consensual Relationship Policy and Procedure
*Specific Authority*
42 USC §§ 2000e-17 et. seq., 42 USC § 2000d, 42 USC §1681 et. seq., 29 USC §701 et. seq., §760.01 et. seq., Florida Statutes, BOG Regulation 2.003 *History*
New: 1/20/09; Amended: 02/12/10, 01/27/15, 07/28/15, 12/19/16

**FLORIDA GULF COAST UNIVERSITY POLICY**

**Policy Number:** 1.006
**Policy Title:** Non-Discrimination, Anti-Harassment, and Sexual Misconduct
**Responsible Division/Office:** Office of Institutional Equity and Compliance
**Effective Date:** 12/19/16

**APPROVED**

_Wilson G. Bradshaw_ (signature)
Wilson G. Bradshaw, President

____December 19, 2016_____
Date



| | **FGCU POLICY 1.013** | **Responsible Unit**: |
|---|---|---|
| | | Office of the General Counsel |
| | **Contract Review** | |

## A. POLICY STATEMENT

To minimize legal and financial risk, the University's attorneys must review every contract to ensure that the terms are appropriate. Certain contracts and templates that have been pre-approved by the Office of the General Counsel may be executed without further legal review.

## B. REASON FOR POLICY

To ensure that each contract entered into by the University is reviewed and legal issues are addressed prior to execution.

## C. APPLICABILITY AND/OR ACCOUNTABILITY

This Policy applies to any contract to which the University or any of its direct support organizations are a party, or which commits University or direct support organization resources.

## D. DEFINITION OF TERMS

*Contract:* An agreement, consistent with their bylaws, between the University or one of its affiliates and an external entity that creates an obligation, to do or not do a particular thing. A Contract does not require payment of money or other compensation to create an obligation.

## E. PROCEDURES

1. All Contracts, other than previously approved standard Contracts and templates, must be forwarded to the Office of the General Counsel for legal review prior to execution to enable University attorneys to make changes as necessary. Once the Office of the General Counsel's attorneys have completed their review, Contracts are forwarded to the appropriate person for further processing and execution.

   (Note: Signatories to all Contracts are indicated on the "Delegations of Authority" tab on the Office of the General Counsel website. Positions not identified as having been delegated authority are not authorized to execute Contracts.)

2. No work should be performed or goods provided before a Contract is fully executed. Sufficient time must be allowed for the Office of the General Counsel and the signing authority to review and process a Contract prior to the commencement of the work to be



**001971**

performed or the goods to be provided. Questions regarding changes made due to legal review should be directed to the attorney making the changes.

3. All Contracts reviewed by the Office of the General Counsel must have the attorney's signature on the Contract.

*Authority*
    *BOG Regulation 1.001, University Board of Trustees Powers and Duties*

*History of Policy*
    *New 07/01/15; Format Changed 09/10/19*


**APPROVED**


___*s/Wilson G. Bradshaw___          July 1, 2015
Willson Bradshaw, President          Date

|  | **FGCU POLICY 1.015**<br><br>**Sexual Harassment Under Title IX** | **Responsible Unit**:<br>Office of<br>Institutional Equity<br>and Compliance |
| --- | --- | --- |

## A. POLICY STATEMENT

1. Florida Gulf Coast University (FGCU) affirms its commitment to ensure that each member of the University community shall be permitted to work, study, and participate in educational programs, including those receiving federal funding, services, and activities, or conduct business in an inclusive and welcoming environment. The University strives to foster a community in which diversity and inclusion are valued and opportunity is realized. This Policy is pursuant to Title IX of the Education Amendment Act of 1972 ("Title IX") and implementing regulations. This Policy creates a mechanism for applicants, students, Employees, volunteers, visitors, as well as Vendors and Contractors of the University community in the United States, to file a complaint of Sexual Harassment, including Sexual Assault, Dating Violence, Domestic Violence, and Stalking, as defined in this Policy. The University strictly prohibits and will not tolerate Retaliation against any individual due to their participation in this process or any other Protected Activity. A claim of Retaliation shall be treated as a separate allegation of discrimination. If the University discovers discrimination or harassment, the University will take affirmative steps to eliminate the Discrimination or harassment, remedy its effects, and prevent its recurrence.

2. The informal and formal procedures set forth below are intended to afford a prompt response to complaints of Sexual Harassment, including Sexual Assault, Dating Violence, Domestic Violence, and Stalking as defined in this Policy. The provisions herein are also established to maintain confidentiality and fairness consistent with applicable federal and state legal requirements.

## B. REASON FOR POLICY

This Policy provides procedures whereby members of the University community, including Employees, students, and third-party Vendors, may file complaints of alleged Sexual Harassment under Title IX and Retaliation. This Policy further outlines the procedures used to investigate such complaints pursuant to FGCU Regulation 1.009, Sexual Harassment Under Title IX, and in compliance with applicable federal, state, and local laws, as well as lawful orders and University regulations.

Note: While this Policy also addresses investigations of Sexual Harassment covered by Title IX, students involved in such investigations may also be interviewed by the Office of Student Conduct within the Division of Student Success and Enrollment Management. Additionally, FGCU Regulation 4.002, Student Code of Conduct and Student Conduct Review Process,

will also be applied to students involved in allegations of violations of this Policy and its related Regulation.

## C. APPLICABILITY AND/OR ACCOUNTABILITY

This Policy is applicable to out-of-unit faculty, staff, students, Vendors, Contractors, guests, patrons, and other third parties participating in any FGCU-sponsored event or program. As for Employees covered by a collective bargaining agreement, and consistent with the applicable Article(s), investigations based on allegations of discrimination, harassment, or sexual misconduct will proceed consistent with section E. of this Policy.

## D. DEFINITION OF TERMS

1. *Complainant:* An individual who is alleged to be the victim of conduct that could constitute Sexual Harassment.

2. *Consent*: Defined as set out in FGCU Regulation 1.003 Non-Discrimination, Anti-Harassment and Sexual Misconduct and its corresponding FGCU Policy 1.006, Non-Discrimination, Anti-Harassment, and Sexual Misconduct.

3. *Dating Violence*: Violence committed by a person who is, or has been, in a social relationship of a romantic or intimate nature with the victim. The existence of such a relationship shall be determined based on consideration of:

   a. The length of the relationship.

   b. The type of relationship.

   c. The frequency of interaction between the persons involved in the relationship.

   For the purposes of this definition, Dating Violence includes, but is not limited to, sexual or physical abuse or the threat of such abuse. Dating Violence does not include acts covered under the definition of Domestic Violence.

4. *Day*: Calendar Day. University holidays and closures (e.g. Days when the University is closed) are excluded from the computation of time. If the time ends on a Saturday, Sunday, or Day when the University is closed, the deadline is extended to the following University business day.

5. *Decision Maker*: The President, Vice President, President's direct report, or their designee(s), in the Respondent's chain of command, or Dean of Students, where applicable.

6. *Deputy Title IX Coordinator(s)*: A University Employee designated to assist in the administration of the responsibilities related to Title IX matters.

7. *Document Filed by a Complainant*: A document or electronic submission (such as by e-mail or through an online portal) that contains the Complainant's physical or digital signature, or otherwise indicates that the Complainant is the person filing the Formal Complaint.

8. *Domestic Violence*: Felony or misdemeanor crimes of violence committed by:

    a. A current or former spouse or intimate partner of the Complainant;

    b. A person with whom the Complainant shares a child in common;

    c. A person who is cohabitating with, or has cohabitated with, the Complainant as a spouse or intimate partner;

    d. A person similarly situated to a spouse of the Complainant under the domestic or family violence laws of the jurisdiction in which the crime of violence occurred; or

    e. Any other person against an adult or youth Complainant who is protected from that person's acts under the domestic or family violence laws of the jurisdiction in which the crime of violence occurred.

9. *Education Program or Activity*: Locations, events, or circumstances over which the University exercised substantial control over both the Responding Party and the context in which the Sexual Harassment occurred, which includes any building owned or controlled by a student organization that is officially recognized by the University.

10. *Employee*: Any out-of-unit faculty or staff member, whether part-time or full-time, regular or temporary, and includes post-doctoral scholars. For the purposes of this Policy, Employees who are also students are considered Employees if the Reporting Party alleges that the student-employee conditioned the provision of a University aid, benefit, or service which the student-employee had authority or ability to provide on an individual's participation in unwelcome Sexual Contact.

11. *Formal Complaint*: A Document Filed by a Complainant or signed by the Title IX Coordinator alleging Title IX Sexual Harassment against a Responding Party and requesting that the University investigate the allegation of Title IX Sexual Harassment.

12. *Investigator*: A person trained as an Investigator and designated by the OIEC Director or the Vice President and General Counsel, who conducts a fact-finding inquiry (investigation) and writes an investigative report.

13. *Protected Activity:* Activity which is protected by federal or state law or regulation, and includes, but is not limited to, participation in a University investigation, the filing of a Complaint in good faith, filing a claim for worker's compensation, taking FMLA leave, or any of the federally protected activities delineated in 18 U.S.C. § 245.

14. *Reporting Party*: An individual who is alleged to be the subject of, or a witness to, conduct that could constitute Title IX Sexual Harassment.

15. *Respondent*: An individual who has been reported to have engaged in conduct that could constitute Title IX Sexual Harassment.

16. *Retaliation*: An adverse action or threat of an adverse action taken against a Complainant, Respondent, or any individual or group of individuals involved in the complaint, investigation, and/or resolution of an allegation of Sexual Harassment under this Policy or for engaging in any activity protected by federal or state law or University policy or regulation. This includes action taken against a bystander who intervened to stop or attempt to stop Sexual Harassment from occurring. Retaliation includes intimidating, threatening, coercing, or in any way discriminating against an individual because of the individual's Complaint or participation, or adverse actions taken with respect to academic activities or work assignments, salary, or other terms of employment.

Charging an individual with code of conduct violations that do not involve Sexual Harassment, but arise out of the same facts or circumstances as a report or Formal Complaint of Sexual Harassment, for the purpose of interfering with any right or privilege secured by Title IX constitutes Retaliation.

17. *Sexual Assault*: Any of the following sexual acts directed against another person, without Consent, including instances where the person in incapable of giving Consent.

   a. *Rape*: Penetration, no matter how slight, of the vagina or anus with any body part or object, or oral penetration by a sex organ of another person, without the Consent of that person.

   b. *Fondling*: The touching of the private body parts of another person for the purpose of sexual gratification, without the Consent of the person, including instances where the person is incapable of giving Consent because of age or temporary or permanent mental incapacity.

   c. *Incest*: Sexual intercourse between persons who are related to each other within the degrees wherein marriage is prohibited by law.

   d. *Statutory Rape*: Sexual intercourse with a person who is under the statutory age of Consent.

18. *Sexual Harassment*: Conduct on the basis of sex that satisfies one (1) of the following:

   a. An Employee conditioning the provision of a University aid, benefit, or service on an individual's participation in unwelcome sexual contact (also known as *quid pro quo*);

   b. Unwelcome conduct determined by a reasonable person to be so severe, pervasive,

---

and objectively offensive that it effectively denies a person equal access to the University's Education Program or Activity; or

    c.   Sexual Assault, Dating Violence, Domestic Violence, or Stalking, as defined in this Policy.

19. *Stalking*: Engaging in a course of conduct, that is, two (2) or more acts, including, but not limited to, acts which the stalker directly, indirectly, or through third parties, by any action, method, device, or means follows, monitors, observes, surveils, threatens, or communicates to, or about, a person, or interferes with a person's property - directed at a specific person that would cause a reasonable person, that is a person under similar circumstances and with similar identities to the victim, to:

    a.   Fear for the person's safety or the safety of others; or

    b.   Suffer substantial emotional distress – which is significant mental suffering or anguish that may, but does not necessarily, require medical or other professional treatment or counseling.

20. *Supportive Measures*:

    a.   Individualized services reasonably available that are non-punitive, non-disciplinary, and not unreasonably burdensome to the other party while designed to ensure equal educational access, protect safety, or deter Sexual Harassment. Supportive Measures may include, but are not limited to:

        1)   Access to counseling services and assistance in setting up initial appointments.

        2)   Rescheduling of exams and assignments.

        3)   Providing alternative course completion options.

        4)   Change in class schedule, including the ability to drop a course without penalty or to transfer sections.

        5)   Modifications of work or class schedules.

        6)   Restrictions on contact between the parties.

        7)   Changes in work or housing locations.

    b.   Supportive Measures will be maintained as confidential, to the extent that maintaining such confidentiality would not impair the ability of the University to provide the Supportive Measures.

---

21. *Title IX Coordinator*: The University Employee responsible for administering a Title IX related centralized complaint filing process, which includes investigating Complaints of gender inequity and/or Sexual Harassment, analyzing trends, and monitoring overall compliance with this Policy as it relates to Title IX compliance and related federal, state, or local legislation and regulations.

22. *Vendor or Contractor*: Individual or business entity in a contractual relationship with the University, but not an Employee.

## E. PROCEDURES

1. Title IX Coordinator

   The University will designate and authorize a Title IX Coordinator to coordinate its efforts to comply with its responsibilities under 34 C.F.R. part 106. The Title IX Coordinator's contact information is displayed on multiple pages throughout the University's website as well as other locations including flyers and trainings.

2. Jurisdiction

   a. The University's Regulation 1.009, Sexual Harassment Under Title IX and the procedures herein will apply to sex discrimination that:

      1) Meets the definition of Sexual Harassment set out in FGCU Regulation 1.009, Sexual Harassment Under Title IX;

      2) Occurs in the context of a University Educational Program or Activity;

      3) Occurs against a person within the United States.

   b. If the University receives a report of sex discrimination, including Sexual Harassment, not meeting these definitions, it will be reviewed and addressed under FGCU Regulation 1.003, Non-Discrimination, Anti-Harassment, and Sexual Misconduct and its corresponding Policy 1.006, Non-Discrimination, Anti-Harassment, and Sexual Misconduct.

3. Report of Sexual Harassment

   a. Any person may report sex discrimination, including Sexual Harassment, to the Title IX Coordinator or designee in person, by mail, by telephone, by electronic mail, through Florida Gulf Coast University EthicsPoint Hotline, or by any other means that results in the Title IX Coordinator or designee receiving the person's verbal or written report. Such a report may be made whether or not the person reporting is the person alleged to be the victim of conduct that could constitute sex discrimination or

Sexual Harassment. Reports may be made at any time, including during non-business hours.

b. Any necessary correspondence will be provided to the Complainant and Respondent using an email address and/or mailing address on file with the University, unless a preferred email address or mailing address is provided by the parties.

c. Upon receipt of a report of Sexual Harassment, the Title IX Coordinator, or designee, will promptly contact the Complainant confidentially to:

   1) Discuss the availability of Supportive Measures;

   2) Determine the Complainant's wishes with respect to Supportive Measures;

   3) Inform the Complainant of the availability of Supportive Measures with or without the filing of a Formal Complaint; and

   4) Explain to the Complainant the process for filing a Formal Complaint of Sexual Harassment as defined in FGCU Regulation 1.009, Sexual Harassment Under Title IX.

d. The University will keep confidential the identity of any individual who has made a report or complaint of sex discrimination, including any individual who has made a report or filed a Formal Complaint of Sexual Harassment; any Reporting Party; any individual who has been reported to be the perpetrator of sex discrimination; any Responding Party; and any witness except as permitted by FERPA, as required by law, or to carry out the conducting of any investigation or hearing under these Procedures or any judicial proceedings or court order, as required by law.

4. Filing a Formal Complaint of Sexual Harassment

   a. The Complainant must submit a document via email, online portal, or in writing that contains the Complainant's physical or digital signature, alleging Sexual Harassment under Title IX against a Responding Party and requesting that the University investigate the allegation(s) of Sexual Harassment under Title IX.

   b. At the time of the filing of a Formal Complaint, the Complainant must be participating in or attempting to participate in an Education Program or Activity of the University.

   c. The Complainant's wishes with respect to whether the University conducts an investigation should be respected, unless the Title IX Coordinator determines that signing a Formal Complaint to initiate an investigation over the wishes of the Complainant is not clearly unreasonable in light of the known circumstances.

    d. Where the Title IX Coordinator signs a Formal Complaint, the Title IX Coordinator is not a Complainant or party during the grievance process and must comply with requirements for Title IX personnel to be free from conflict and bias.

    e. The Title IX Coordinator or designee, may, at their discretion, consolidate Formal Complaints where the allegations arise out of the same facts.

5. Dismissal of Formal Complaint of Sexual Harassment under Title IX

A Formal Complaint of Sexual Harassment under Title IX may be dismissed in writing for the following reasons:

    a. If the allegations in a Formal Complaint do not meet the definition of Sexual Harassment under the FGCU Regulation 1.009, Sexual Harassment Under Title IX, or did not occur in the University's Education Program or Activity against a person in the United States, the University will dismiss such allegations, in writing, under Title IX, but may still address the allegations pursuant to University Regulation 1.003, Non-Discrimination, Anti-Harassment, and Sexual Misconduct and its corresponding FGCU Policy 1.006, Non-Discrimination, Anti-Harassment, and Sexual Misconduct.

    b. If the Complainant informs the Title IX Coordinator in writing that the Complainant desires to withdraw from the Formal Complaint or allegations therein.

    c. If the Respondent is no longer enrolled or Employed by the University.

    d. Specific circumstances prevent the University from gathering sufficient evidence to reach a determination (e.g. lack of cooperation from Complainant).

6. Informal Procedure

    a. Informal resolutions may be facilitated by the University to resolve a Formal Complaint at any time prior to reaching a determination regarding responsibility. Informal resolutions do not involve a full investigation and adjudication. Parties must voluntarily Consent to the informal resolution process in writing before it can proceed. If an informal resolution is elected by the parties and deemed appropriate by the University, the parties will be provided written notice of the informal resolution, containing the following:

    1) The reported conduct;

    2) The requirements of the informal resolution process, including the circumstances under which it precludes the parties from resuming a Formal Complaint arising from the same allegations;

    3) A provision that any party has the right to withdraw from the informal resolution process and resume the formal resolution process of the Formal Complaint at any time prior to agreeing to a resolution; and

    4) Any consequences resulting from participating in the informal resolution process, including the records that will be maintained or could be shared.

  b. Informal resolution processes will not be used to resolve reports that an Employee sexually harassed a student.

  c. Examples of Informal Resolutions include, but are not limited to:

    1) No-Contact Agreements

    2) Mediation

    3) Training

    4) Volunteer Service

    5) Written/Verbal Apology

7. Formal Procedure

  a. The formal resolution process will begin with written notice to the parties. Within ten (10) Days of receipt of a Formal Complaint, the University will provide written notice of the investigation to parties who are known. The written notice will be provided with sufficient time to prepare a response before any initial interview. The written notice may be amended, with written notice to the parties.

  b. The written notice will include the following information:

    1) Notice of the University's process for resolving reports of Title IX Sexual Harassment, including any available informal resolution processes;

    2) Notice of the allegations of Sexual Harassment, including, if known, the following:

      a) The identities of the parties involved in the incident;

      b) The conduct reportedly constituting Sexual Harassment; and

      c) The date and location of the reported incident.

    3) Information about the parties' rights and responsibilities, including the following:

    a) That the Responding Party is presumed not responsible for the reported conduct and that a determination regarding sufficient or insufficient evidence of a regulation/policy violation is made at the conclusion of the formal resolution process;

    b) That the parties may have an advisor of their choice, who may be, but is not required to be, an attorney;

    c) That the parties and their advisor may inspect and review evidence; and

    d) That it is a violation of this Policy to knowingly make false statements or knowingly submit false information during the formal resolution process.

  c. The Title IX Coordinator or designee shall confer with the appropriate University officials to ensure that, if warranted, Supportive Measures are pursued to protect both parties pending completion of the matter. Supportive Measures may also include Interim Suspension for students and/or Administrative Leave for Employees.

8. Investigation

  a. The Title IX Coordinator will assign a Deputy Title IX Coordinator(s) and/or Investigator(s) who have training and experience investigating allegations of prohibited conduct. The Investigator(s) will gather information regarding the alleged conduct and will remain neutral and impartial throughout the course of the investigation.

  b. All Employees of the University must cooperate with an investigation. Failure to do so could result in disciplinary action.

  c. An Investigator will complete the investigation as promptly as possible and within a reasonable amount of time based on individual circumstances and complexity of the case, unless there are extenuating circumstances. In such a case, notice, along with reasons for the extension, shall be provided to the parties.

  d. In the event that a valid Complaint of discrimination or harassment or conflict of interest is filed against an individual Employee within the Office of Institutional Equity and Compliance (OIEC), or the OIEC as an administrative arm of the University, an investigation will be conducted by an Investigator external to the University and will be secured by the Vice President and General Counsel.

  e. In all phases of the formal resolution process, the parties will be provided an equal opportunity to present fact and expert witnesses, and inculpatory and exculpatory evidence.

f.   The parties also will be provided an equal opportunity to have an advisor (e.g. legal counsel, a union representative, or a support person) of their choice in any meeting related to the resolution process. However, such person's role shall be limited to observation, support, or advice; the advisor shall not speak on behalf of the person to whom they are providing support or advice. If a party does not have an advisor, the University will provide an advisor without fee. That advisor will be chosen by the University and may, but is not required to be, an attorney.

g.   No party will be restricted from discussing the reported conduct under investigation or from gathering and presenting relevant evidence.

h.   Any person whose participation is invited or expected in an investigative interview, hearing, or other meeting related to the resolution process will be provided written notice of the date, time, location, participants, and purpose of the meeting with sufficient time for the party to prepare to participate.

i.   Throughout the formal resolution process, there is a presumption that the Responding Party is not responsible for the reported conduct until a determination regarding sufficient/insufficient evidence of a regulation/policy violation is made at the conclusion of the investigation process.

j.   The burden of proof and the burden of gathering evidence sufficient to reach a determination of responsibility rests on the University and not on the parties. The University will not access, consider, disclose, or otherwise use a party's records that are made or maintained by a physician, psychiatrist, psychologist, or other recognized professional or paraprofessional acting in the professional or paraprofessional's capacity, or assisting in that capacity, and which are made and maintained in connection with the provision of treatment to the party, unless the University obtains the party's voluntary, written Consent to do so. Similarly, no person will be required to provide evidence that constitutes, or seeks disclosure of, information protected under a legally recognized privilege, unless the person holding such privilege has waived the privilege.

9.   Investigative Report and Determination

a.   At the conclusion of the investigation, the Investigator(s) will prepare a draft investigative report summarizing all evidence obtained as part of the investigation that is directly related to the allegations raised in the Formal Complaint. The draft investigative report will include a determination of sufficient or insufficient evidence of a regulation/policy violation based on the preponderance of the evidence standard.

b.   Prior to the completion of the investigative report, the Title IX Coordinator, designee, or Investigator will send to each party and the party's advisor, if any, the draft investigative report for inspection and review. The evidence will be sent in an

electronic or hard copy format. The parties will have ten (10) Days to submit a written response.

c. After receiving the parties' written responses or after the lapse of ten (10) Days without receipt of such responses, the Investigator(s) will consider any written response(s) and create an investigative report, which will fairly summarize the relevant evidence.

d. The Title IX Coordinator or designee will send to each party and the party's advisor, if any, the final investigative report in an electronic or hard copy format. The report will be provided to the parties simultaneously.

10. Hearings

a. Once the Investigative Report has been completed upon a finding of sufficient evidence of a regulation/policy violation and investigative appeal rights articulated in Section E.10, have expired or been exhausted, a copy of the report will be provided to the appropriate Division/Office for adjudication/disposition as follows:

1) Student Respondent - FGCU Regulation 4.002, Student Code of Conduct and Student Conduct Review Process ("Student Code of Conduct"). Students who are also Employees may be subject to further University disciplinary action as well as disciplinary action under the Student Code of Conduct.

2) Employee Respondent –hearing pursuant to the procedures outlined below.

3) External Respondent – e.g. visitors, Vendors, applicants, etc. - referred to appropriate University Division(s) for disposition.

b. Decisions regarding Employee Respondent responsibility will be made by an internal or external Hearing Officer appointed by the University. Both parties have the ability to challenge the appointment of a Hearing Officer based on an actual conflict of interest, bias, or lack of impartiality. The request must be submitted in writing or raised no later than the date of the pre-hearing meeting and must clearly state the grounds to support a claim of bias, conflict of interest, or an inability to be fair and impartial.

c. Hearings will be conducted by an internal or external Hearing Officer appointed by the University and will serve as a single Decision Maker. Hearings will generally be conducted within thirty (30) Days of the transmission of evidence collected to the parties for inspection and review and will occur according to the following procedures.

d. Advisors

1) Each party may be accompanied to the hearing by an advisor of their choice. If a party does not have an advisor present at the live hearing, the University will provide an advisor without fee. That advisor will be chosen by the University and may, but is not required to be, an attorney. The advisor provided by the University will only conduct cross-examination on behalf of the party and will not draft questions or otherwise advise the party in any portion of the resolution process.

2) All advisors are expected to conduct themselves with appropriate decorum, to respect the privacy of the parties and witnesses, and to avoid delaying, disrupting, or otherwise interfering with the Hearing or any other portion of the resolution process.

e.  Pre-Hearing Meeting

The Hearing Officer will meet separately with each party to resolve pre-hearing concerns. At this pre-hearing meeting, the parties will each have the opportunity to raise any challenge to the composition of the Hearing Panel based on bias, conflict of interest, or lack of impartiality. The parties will also have the opportunity to address questions about the hearing process. At this meeting, the Hearing Officer will also review expectations for hearing participants, including any advisor.

f.  Hearing Procedures

1) Hearings will be conducted in closed session. Hearings must be conducted live, but at the request of either party or at the discretion of the University, Hearings may be conducted with the parties located in separate rooms with technology enabling the Hearing Panel and parties to simultaneously see and hear the party or witness answering questions. Hearings will be recorded by audio or audiovisual means, and the recording or transcript will be made available to the parties for review and inspection.

2) Both parties will have the opportunity to provide a statement of their account related to the alleged conduct, beginning with the Complainant and followed by the Respondent. Each party will then have the opportunity to present any witnesses, beginning with the Complainant's witnesses and followed by the Respondent's witnesses.

3) The Hearing Officer and/or Hearing Panel and the parties or their advisors may pose questions to any individual (including parties and witnesses) providing statements at the hearing. Each party's advisor will be permitted to ask the other party all relevant questions and follow-up questions, including those challenging credibility, after the party initial statement. Each party or their advisor will be permitted to ask witnesses all relevant questions and follow-up questions, including those challenging credibility, after the witness's initial statement. This cross-examination will be conducted directly, orally, and in real time. The cross-

examination of each party will be conducted by the party's advisor and never by a party themselves.

4) Only relevant cross-examination and other questions may be asked. Before a participant answers a question, the Hearing Officer must first determine whether the question is relevant and explain any decision to exclude a question as not relevant.

5) Questions and evidence about a Complainant's sexual predisposition or prior sexual behavior are not relevant, unless such questions and evidence are offered to prove that someone other than the Respondent committed the conduct alleged or if the questions and evidence concern specific incidents of the Complainant's prior sexual behavior with respect to the Respondent and are offered to prove Consent.

6) If a party or witness does not submit to cross-examination at the hearing, the Hearing Officer and/or Hearing Panel must not rely on any statement of that party or witness in reaching a decision regarding responsibility. The Hearing Officer and/or Hearing Panel cannot draw an inference about the determination regarding responsibility based solely on a party or witness's absence from the live hearing or refusal to answer cross-examination or other questions.

g. Determination Regarding Responsibility

1) The determination regarding responsibility will be made by the Hearing Officer or Hearing Panel after the hearing and cannot be made by the Title IX Coordinator or the Investigator(s). Within seven (7) Days of the conclusion of the Hearing, the Hearing Officer or Hearing Panel will make a determination of responsibility using the preponderance of the evidence standard and will issue a written determination regarding responsibility.

2) In reaching the determination regarding responsibility, the Hearing Officer or Hearing Panel will objectively evaluate all relevant evidence – both inculpatory and exculpatory. The Hearing Officer or Hearing Panel will not make credibility determinations that are based on a person's status as Complainant, Respondent, or witness. The Hearing Officer or Hearing Panel will not rely on any statement of that party or witness who did not submit to cross examination.

3) The written determination will be provided to the parties simultaneously. The written determination will include findings of fact, conclusions about whether the alleged conduct occurred, rationale for the result as to each allegation, any disciplinary sanctions imposed on the Respondent, remedies provided to the Complainant, information about the appeal process, including the available grounds for an appeal, the time frame for submitting an appeal, and the name of the Appeals Officer who will be assigned to review any appeal filed.

---

11. Disciplinary Action/Sanctions

    a. A determination by the Decision Maker as to disciplinary action, if any, will occur within fourteen (14) Days of the delivery of the determination regarding responsibility, unless the Respondent/Employee is covered under a collective bargaining agreement or the Student Code of Conduct. Under those circumstances, the relevant documents will control the imposition of the disciplinary action, if any. If warranted, an extension of time is permitted to reach a determination as to disciplinary action.

    b. The Respondent and the Complainant may, if appropriate, be informed of the disciplinary action to be imposed.

    c. Any discipline to be imposed shall be determined in accordance with the Student Code of Conduct, where the Respondent is a student; FGCU Regulation 5.016, Disciplinary Actions, and related policies where the Respondent is an Employee; and a collective bargaining agreement where the Respondent is a covered Employee.

    d. These sanctions, disciplinary actions, and corrective measures are designed to:

        1) Address the effects of the misconduct on the Complainant and the University community;

        2) Hold the Respondent accountable for the conduct committed; and

        3) Eliminate Sexual Harassment, prevent its recurrence, and remedy its effects.

    e. The sanctions, disciplinary actions, and corrective actions the University imposes may include educational, restorative, rehabilitative, and/or punitive components. Some behavior, however, is so harmful to the educational process and/or the work environment that it requires severe sanctions or disciplinary action, including suspension from the University or expulsion from the University or suspension without pay from employment or termination of or separation from employment.

12. Appeals

    a. Either party may appeal from a determination regarding responsibility or from the University's dismissal of a Formal Sexual Harassment Under Title IX Complaint, in whole or in part, within seven (7) Days of receiving the determination of responsibility or dismissal. An appeal can be made to the Vice President and General Counsel on the following basis:

        1) Procedural irregularity that affected the outcome of the matter;

   2)   New evidence that was not reasonably available at the time of the determination regarding responsibility or dismissal was made that could affect the outcome of the matter; and/or

   3)   The Title IX Coordinator, designee, and/or Investigator(s) had a conflict of interest or bias that affected the outcome of the matter.

b.   Within seven (7) Days of receipt of a request for appeal, the Vice President and General Counsel, or designee, will make one (1) of the following determinations:

   1)   The matter should be remanded for further consideration of the evidence, to correct any procedural irregularities, or alleviate any conflict of interest/bias; or

   2)   The requestor has not presented information that warrants a review and thus the findings are final.

c.   The determination as to the appeal is not a substantive review of the matter; rather, the appeal process is in place to ensure that each party is provided full due process.

d.   Appeals/grievances regarding disciplinary action/sanction(s) must be made pursuant to the procedures outlines in the Student Code of Conduct, where the Respondent is a student; FGCU Regulation 5.016, Disciplinary Actions, and related policies where the Respondent is an Employee; and a collective bargaining agreement where the Respondent is a covered Employee.

13. Remedies

When there has been a determination that the Respondent has violated the Policy, the University will consider appropriate remedies, based upon the findings and unique circumstances of each report. Remedies are measures taken to address the effects of the conduct on the Complainant, restore the Complainant's safety and well-being, and maximize the Complainant's educational and employment opportunities. Remedies seek to restore to the Complainant, to the extent possible, all benefits and opportunities lost as a result of the Sexual Harassment. Remedies may include, but are not limited to, adjustment of work or class assignments, location, and/or schedule or recommending a review of a negative performance or grade decision that may have resulted from the conduct that violated the Policy.

14. Retaliation

a.   All persons involved with the investigation are cautioned that Retaliation is strictly prohibited. Investigations encompass, but are not limited to, witness interviews, the

gathering of documentation and other evidence, as well as other investigative techniques deemed appropriate by the Investigator.

b. Any University student, Employee, visitor, or group that engages in Retaliation against a University student, Employee, or visitor who has filed a complaint alleging discrimination, participated in an investigation, or otherwise exercised their rights and privileges against discrimination, will be subject to disciplinary action pursuant to University regulations. This prohibition against Retaliation applies regardless of the merits of the initial complaint of discrimination.

c. The prohibition against Retaliation extends to Protected Activity covered by federal or state law or University policy or regulation. The OIEC will conduct an investigation of Retaliation depending on the circumstances surrounding the allegation of Retaliation. The Office of the General Counsel will secure outside counsel to conduct an investigation in the event there is valid complaint of a conflict of interest against an individual Employee of the OIEC or the OIEC as an administrative arm of the University.

d. The exercise of rights protected under the First Amendment does not constitute Retaliation.

## F. MISCELLANEOUS PROVISIONS

1. After an incident of Sexual Harassment, Sexual Assault, Dating Violence, Domestic Violence, and Stalking as defined in this Policy, the individual should consider seeking medical attention and law enforcement assistance as soon as possible. In circumstances of Sexual Assault, health care providers can treat injuries and take steps to address any medical concerns or related issues. Although the University strongly encourages all members of its community to report such violations of this Policy to law enforcement, it is the affected individual's choice whether or not to make such a report.

2. As time passes, evidence may dissipate or become lost or unavailable, thereby making investigation, possible prosecution, disciplinary proceedings, or obtaining protection from abuse through the use of a protective order related to the incident, more difficult. If an individual suffering from an incident covered by this Policy chooses not to make a complaint regarding the incident, they nevertheless should consider speaking with the University Police Department or other law enforcement agencies to preserve evidence in the event the individual reconsiders the decision not to make a Complaint.

3. Regardless of whether criminal charges are filed, allegations under this Policy may also be heard through the Student Code of Conduct, where a student is the Respondent/accused.

4. The Director of the OIEC is the custodian of filed records associated with the investigation of Complaints under FGCU Regulation 1.009, Sexual Harassment Under Title IX.

5. The University may utilize the procedure articulated in this Policy to address investigations in general. If this process is used for an investigation involving something other than Sexual Harassment under Title IX, the processes may be modified, to some extent, on a case by case basis. Additionally, the time frames for actions may be modified and extended as warranted.

## G. RESOURCES

1. The University will provide resources to support persons who have made allegations of Sexual Harassment, including Sexual Assault, Dating Violence, Domestic Violence, and Stalking as defined in this Policy. Regardless of whether a person who reports such allegations elects to pursue a criminal complaint, the University will assist persons alleging Sexual Harassment, including Sexual Assault, Dating Violence, Domestic Violence, and Stalking. To the extent cooperation and Consent are provided, University offices, including but not limited to, the Confidential Victim Advocate, the University Police Department (UPD), Counseling and Psychological Services (CAPS), Student Health Services (SHS), and Student Care Services will work cooperatively to ensure that the Complainant's health, physical safety, academic status, and employment status are protected, pending the outcome of a formal University investigation of the allegations. For example, if reasonably available and as applicable, a Complainant may be offered changes to their work environment, academic schedule or University-provided housing, in addition to counseling, health services, and assistance in notifying appropriate local law enforcement.

2. If requested, within CAPS and SHS, resources are available to provide support to students. Additionally, Student Care Services can coordinate assistance and support related to a student's physical and mental health, personal safety, and academic status. For its Employees, the University offers assistance through the Employee Assistance Program (EAP). Also, protection from abuse through the use of protective orders may be available through the court system.

   EAP- https://www.fgcu.edu/hr/benefits/perks

3. The Office of Student Conduct offers assistance in navigating the conduct process to accused and/or charged Students.

4. Other resources available related to Sexual Harassment, including Sexual Assault, Dating Violence, Domestic Violence, and Stalking include:

   a. Abuse, Counseling and Treatment of Fort Myers: http://www.actabuse.com/

b.  Assault and Rape Information, Support and Education (ARISE):
http://www.fgcu.edu/arise/

c.  Department of Justice: http://www.justice.gov/ovw/sexual-assault

d.  Florida Coalition Against Domestic Violence: http://www.fcadv.org/

e.  Florida Counsel Against Sexual Violence: http://www.fcasv.org/

f.  Project Help of Naples: http://projecthelpnaples.org/

*Related Information*
*FGCU Regulation 1.003, Non-Discrimination, Anti-Harassment, and Sexual Misconduct*
*FGCU Regulation 1.009, Sexual Harassment Under Title IX*
*FGCU Regulation 4.002, Student Code of Conduct and Student Conduct Review Process*
*FGCU Regulation 5.016, Disciplinary Actions*
*FGCU Regulation 5.020, Grievance Regulation*
*FGCU Policy 1.006, Non-Discrimination, Anti-Harassment, and Sexual Misconduct*
*FGCU Policy 1.007, Consensual Relationship Policy and Procedure*

*Authority*
*29 USC §701 et. seq.*
*42 USC §1681 et. seq.*
*42 USC § 2000d*
*42 USC §§ 2000e-17 et. seq.*
*Title IX of the Education Amendments Act of 1972 and accompanying regulations*
*Section 760.01 et. seq., Florida Statutes*
*BOG Regulation 1.001, University Board of Trustees Powers and Duties*
*BOG Regulation 2.003, Equity and Access*

*History*
*New 08/11/20*

**APPROVED**


____*s/Michael V. Martin____             August 11, 2020
Michael V. Martin, President              Date

|  | **FGCU POLICY 2.012** | **Responsible Unit**: Division of Academic Affairs |
|---|---|---|
| | **Shared Governance** | |

## A. POLICY STATEMENT

The purpose of shared governance at FGCU is to effectively promote the accomplishment of the University's unique vision and mission through shared responsibility and accountability among stakeholders, while exercising sound principles of fiscal management and retaining public accountability. FGCU is committed to the notion that the best path to success is one where the responsibility and accountability for academic excellence and student success is shared openly and cooperatively among all parties.

Shared governance involves collaborative efforts to fulfill and fully execute the institutional mission by participating in matters including the:

1. Identification of priorities;

2. Development of policies;

3. Defining of responsibility for ethical leadership;

4. Enhancement of community partnerships; and

5. Stewardship of the academic institution as a whole.

## B. PRINCIPLES OF SHARED GOVERNANCE



FGCU asserts there are certain attributes of shared governance that should be observed and respected by all parties, regardless of the specific processes followed or levels of stakeholder involvement. An effective process of shared governance is characterized by:

1. Collegiality, mutual trust, and collaboration

   Stakeholders promote a climate of trust and cooperation that fosters the expression of views without negative consequences. Stakeholders openly support shared governance, in words and actions, and view themselves as partners in the success of the University. Stakeholders openly support, encourage, and reward collegial participation in shared governance.

2. Proactive involvement

Stakeholders seek out and respect views from other stakeholders and affected parties who
have relevant information, expertise and involvement in matters under consideration
which may include examples such as: University mission and budget; curriculum and
instruction; research; appointment, promotion, and retention of faculty members and the
development of policies that affect faculty and staff welfare; development of University
policies and procedures; selection and appointment of administrators; issues that affect
the ability of students to complete their education. Formal and informal mechanisms for
obtaining information by stakeholders are multiple in nature, assuring that stakeholders
have easy access to knowledge about governance issues under consideration. These may
include email alerts, Web postings, or consideration by deliberative bodies such as the
Planning and Budget Council, Faculty Senate, Staff Advisory Council, and Student
Government in accordance with their by-laws and existing circumstances.

3. Representative participation

Number of faculty, staff, and student participants work to accurately and democratically
portray the full range and nature of valid constituent issues in governance processes,
recognizing the majority position when it is known, but also crediting important minority
perspectives. As circumstances warrant, issues are brought before core representative
bodies such as the Planning and Budget Council, Faculty Senate, Staff Advisory Council,
and Student Government Senate in order to facilitate debate and dialogue and allow
feedback from stakeholders. Representatives of shared governance bodies may be
appointed or elected by their constituencies in accordance with relevant by-laws. Such
bodies may elect their own presiding officers or they may be appointed *ex officio* in
accordance with relevant by-laws.

4. Clarity of roles

Number of stakeholders mutually develop a common understanding of, and respect for,
their appropriate roles in both regular and *ad hoc* processes, and establish methods of
resolving issues when consensus cannot be reached. Examples of appropriate roles and
their contexts for faculty, staff, or student participation comprise:

a. The responsibility of administrators for forming and articulating a vision for the
institution, for providing strategic leadership, and for managing its human resources,
finances, and operations;

b. The central role of the faculty in the institution's teaching, research, and service
programs, including the assessment of the quality of these activities through peer
review;

    c.  The essential support provided by staff in facilitating the institution's operations and the legitimate interest of the staff in participating in the development of policies and procedures that affect them and the welfare of their institutions;

    d.  That students are the institution's main academic educational focus and that they have a legitimate interest in matters affecting their institutional academic experience, including but not limited to tuition and fees, their academic evaluation, housing, and student life; and

    e.  That there is a role for each group in the search for and selection of key institutional administrators such as the President as appropriate to circumstances.

5.  Transparency

Stakeholders keep each other informed on upcoming and ongoing decision processes, both shared and autonomous, to ensure that all parties are cognizant of significant developments throughout the process providing opportunities for input and recording/noting objections or dissenting statements submitted by representative governance bodies.

6.  Timeliness

Efforts shall be made to provide reasonable advance notice of proposed actions that can affect the professional or intellectual lives of stakeholders to allow for effective dialogue and to foster mutual cooperation wherever possible before adoption and implementation.

7.  Accountability

Stakeholders recognize the value of and actively participate in systematic review, assessment, and continuous improvement of decision-making processes, and cooperatively and constructively help remediate governance processes as needed. Representative bodies should periodically review the efficacy of mechanisms intended to facilitate institutional shared governance and suggest ways in which these mechanisms can be enhanced to ensure continued effectiveness.

## C. REASON FOR POLICY

The Policy is necessary to define and clarify the roles and responsibilities among institutional stakeholders in the governance of the University

## D. APPLICABILITY AND/OR ACCOUNTABILITY

The Policy applies to all University constituencies defined in this Policy.

## E. DEFINITION OF TERMS PROCEDURES

Implementation of shared governance at FGCU is mediated through the following documents:

1. Florida Gulf Coast University Board of Trustees By-Laws;

2. Planning and Budget Council By-Laws and the operating procedures of its constituent committees;

3. Florida Gulf Coast University Board of Trustees and the United Faculty of Florida, Florida Gulf Coast University Chapter's current Collective Bargaining Agreement;

4. Faculty Senate By-Laws;

5. Staff Advisory Council By-Laws; and

6. Student Government By-Laws.

*Authority*
*BOG Regulation 1.001, University Board of Trustees Powers and Duties*

*History*
*New 06/13/2014; Format Changed 09/10/19*

## APPROVED

| \_\_\_\_*s/Wilson G. Bradshaw\_\_\_\_\_ | June 13, 2014 |
| Wilson G. Bradshaw, President | Date |



| | **FGCU POLICY 3.025** | **Responsible Unit**: Budget Office |
|---|---|---|
| | **Budget Management Policy** | |

## A. POLICY STATEMENT

The Budget Office is responsible for the management and oversight of the departmental budgets. The Budget Office, at its discretion, will complete Budget Transfers or Other Financial Transactions in order to rectify budgets which are negative at the "pool" level. This Policy does not apply to the Sponsored Research Trust Fund.

## B. REASON FOR POLICY

This Policy is created to provide the Budget Officer with the authority to properly manage various departmental budgets, as well as the University budget in order to assure the University meets its financial obligations for responsible management of University funds.

## C. APPLICABILITY AND/OR ACCOUNTABILITY

This Policy requires all departments maintain a positive budget.

## D. DEFINITION OF TERMS

1. *Available Balance*: The amount of expenditure budget remaining within a given budget.

2. *Budget Pool*: A group of expenditures organized together to share one common budget. For example, all elements of travel are grouped together to form a common "travel pool" budget. The budget that is posted within a pool addresses all related expenses.

3. *Budget Transfer*: A budget amendment processed in Banner Finance that re-allocates funds.

4. *Negative Budget*: Any budget where the total expenses exceed available budget and/or revenue.

5. *Negative Cash*: Any fund where the available cash is less than zero.

6. *Other Financial Transactions*: Any other transaction in Banner Finance that may be required to solve a budget issue. These include, but are not limited to, expenditure transfers, transfers of cash, and other movement resources or expenditures.



## E. PROCEDURES

1. Upon close of the fiscal month, the Budget Officer will review budgets and identify those areas with negative balances at the pool level, and/or funds where revenues do not meet expenses. When necessary, the Budget Officer will reallocate resources from within the unit to rectify negative balances or Negative Cash balances. Prior to doing so, the Budget Officer will notify the appropriate department personnel via email of the negative position. Departments will have three (3) business days from the notification to rectify any outstanding issues before action will be taken by the Budget Officer. In the event that a Budget Transfer is used to solve a Negative Budget balance, such transfer will be processed as a non-recurring amendment.

2. Should the Budget Officer reallocate budget to rectify a negative balance, or if its actions otherwise impact the financial resources of a given unit, said unit will be notified once such adjustments are made.

*Authority*
   BOG Regulation 1.001, University Board of Trustees Powers and Duties

*History of Policy*
   New 01/27/10; Format Changed 09/10/19

**APPROVED:**


___*s/Wilson G. Bradshaw___          January 27, 2010
Wilson G. Bradshaw, President          Date



| | **FGCU POLICY 3.028** | **Responsible Unit:** |
|---|---|---|
| | **Special Leaves and Furlough** | Human Resources |

## A. POLICY STATEMENT

The University recognizes that there will be occasions when Employees will need to be away from work because of circumstances not of their own making. To facilitate this time away from work without financial harm to the Employee, the University shall provide paid leave to out-of-unit faculty, executive service, administrative and professional (A&P), and support personnel (SP) Employees according to the special circumstances outlined herein.

Additionally, in times of extraordinary budget reduction, it may become necessary to implement an Employee Furlough in order to preserve the financial well-being of the University. It is the policy of Florida Gulf Coast University to implement an Employee Furlough only after reasonable alternatives have been exhausted. Furloughs will be implemented in a manner that is sensitive to the mission of the University and the needs of its faculty and staff.

## B. REASON FOR POLICY

This Policy provides guidance to out-of-unit faculty, executive service, A&P, and SP Employees for conditions under which leave may be granted.

## C. APPLICABILITY AND/OR ACCOUNTABILITY

Unless otherwise addressed in a collective bargaining agreement, this Policy applies to out-of-unit faculty, executive service, A&P and SP Employees.

## D. DEFINITION OF TERMS

1. *Employee:* A full-time or part-time executive service, A&P, or SP staff or out-of-unit faculty.

2. *Full Furlough:* Employees are relieved of work duties and are not authorized to perform work during this period.

3. *Furlough:* The placement of an Employee in a mandatory unpaid partial or full leave of absence status for a specified number of hours or days within a specified time frame. A Furlough is not a layoff or reduction in workforce and may be used to avoid or delay such action. The Employee remains an Employee while taking an unpaid leave of absence. Preserving an Employee's continuous service, length of service, hire anniversary date, and continued access to health benefits and employer contributions to Employee health



002160

insurance coverage is the goal of a Furlough.

4. *Partial Furlough*: Employees work specific number of Furlough days or hours.

5. *Special Leaves (Leave)*: Leave with pay granted to an Employee to attend certain civic, administrative, or University-related functions, as well as for other specific situations. Special Leaves, as identified in this Policy, shall not be counted against an Employee's accumulated annual or sick leave, unless specified.

6. *Unit Head*: The person designated by the President or Vice President of an area to be immediately responsible for the administration of a Furlough.

## E. SPECIAL LEAVES

Special Leave may be used only for the specific reasons as described below and does not accrue.

1. Jury Duty or Court Appearances

   a. An Employee who is summoned for jury duty shall be granted paid Leave for all hours required for such duty, not to exceed the number of hours in the Employee's normal workday. If the jury duty does not coincide with the regular work schedule, the Employee shall be granted Leave based on the total hours served on jury duty and such Leave shall be granted on the next scheduled workday. If the jury duty does not require absence for the entire workday, the Employee shall return to work immediately upon release by the court.

   b. When an Employee is subpoenaed as a witness in an administrative hearing not involving personal interests or service as a paid expert witness, the Employee shall be granted Leave and any witness fee/mileage shall be retained by the Employee.

   c. If an Employee is subpoenaed in a matter involving the University as a witness or defendant, such appearance shall be considered a part of the Employee's job assignment. Any witness fee/mileage allocated to the Employee may be retained by the Employee.

   d. In matters of personal litigation or service as a paid expert witness, the Employee is required to use accrued annual leave or leave without pay.

2. Elections

   A maximum of two (2) hours of Leave may be provided for voting in public elections when the Employee lives such a distance from the assigned work location that it precludes the Employee from voting outside of working hours.

002161

3. Examinations and Interviews

   An Employee may be granted Leave for the purpose of taking examinations, provided
   such examinations are required by University employment or the Military Services, or for
   the purposes of interviewing for positions within the University.

4. Military Service

   a. Training

      An Employee who is a commissioned reserve officer or reserve enlisted personnel of
      the United States military or naval service or members of the National Guard, may
      receive Leave, without limitation, not to exceed 240 hours in any one calendar period
      when engaged in training ordered under the provisions of the United States military
      or naval training regulations for such personnel when assigned to active or inactive
      duty.

   b. Military Service

      An Employee who is a service-member in the National Guard or a reserve component
      of the Armed Forces of the United States is granted Leave to perform active military
      service, for the first thirty (30) days of such Leave with full pay. An Employee who is
      a reservist called to active military service will be provided a supplement to the
      military pay in order to bring the Employee's total salary, inclusive of their military
      base pay, to the level earned at the time they were called to active duty, after the first
      thirty (30) days of such Leave. No supplement will be provided if the Employee's
      military base pay equals or exceeds the Employee's salary earned at the time they
      were called to active duty.

   c. Uniformed Services Employment and Reemployment Rights Act (USERRA).

      An Employee covered by USERRA will continue to receive all health insurance and
      other existing benefits, as applicable, pursuant to USERRA.

5. Bereavement

   An Employee, upon request, shall be granted two (2) regular workdays of Leave upon the
   death of their spouse, brother, sister, or grandparent, as well as a parent, child, or
   grandchild of the Employee or the Employee's spouse. In accordance with FGCU Policy
   3.034, Sick Leave, at the discretion of the supervisor, an Employee may use sick leave in
   reasonable amounts to supplement bereavement leave.

6. Disasters and Other Emergency Conditions

   a. The University President may close the University in the event an Executive Order

002162

has been issued by the Governor declaring an emergency. When natural disaster or other sudden and unplanned emergency conditions occur which are not addressed by an Executive Order, the University President shall determine the status of Employees in emergency situations and may close the University as conditions warrant.

b.  Except for those Employees designated as essential personnel by the University, any Employee assigned to those facilities which have been closed shall be granted Leave for the period the facility is closed.

7.  Florida Disaster Volunteer Leave

An Employee who is a certified disaster service volunteer of the American Red Cross or Community Emergency Response Team (CERT) may be granted Leave for not more than fifteen (15) days in any one calendar year to participate in specialized disaster relief services. Leave under this provision may be granted only for services within the boundaries of the State of Florida. Where the Governor and Cabinet have approved state Employees to volunteer disaster relief services, the University President may authorize an Employee to participate in such services outside the State of Florida. Such Leave may be granted upon the request of the American Red Cross or CERT and upon the approval of the University. An Employee granted Leave under this provision shall not be deemed to be a University Employee for purposes of workers' compensation.

8.  Athletic Competition

An Employee who is a group leader, coach, official, or athlete who is a member of the official delegation of the United States team for athletic competition on the world, Pan American, or Olympic level, shall be granted Leave for the purpose of preparing for and engaging in the competition for the period of the official training camp and competition or thirty (30) days a year, whichever is less.

9.  Formal Investigation

a.  An Employee, who is under investigation by the University for an alleged violation of a statute or University regulation or policy, may be placed on Administrative Leave for the length of the investigation, when the Employee's absence from the work location is necessary to complete such investigation.

b.  In instances where an Employee has been notified of a proposed suspension or dismissal, the Employee may be placed on Administrative Leave between the first notice and the effective date of the action.

10. Extraordinary Circumstances

The President, or designee, may place an Employee on Leave when the Employee's presence in the workplace may result in one (1) or more of the following:

   a. Damage to University property;

   b. Interference with University operations; or

   c. The health, safety, or welfare of the Employee or other members of the University community.

11. Disabled Veterans Re-examination or Treatment

   An Employee who has been rated by the Veterans Administration to have incurred a service connected disability and has been scheduled by the Veterans Administration to be re-examined or treated for such disability shall, upon presentation of written confirmation, be granted Leave for such re-examination or treatment not to exceed six (6) days in any calendar year.

12. Worker's Compensation

   An Employee shall remain in full pay status for a period up to a maximum of forty (40) hours without being required to use accrued leave in the event of any work-related injury compensable under the Florida Worker's Compensation Law.

## F. PROCEDURES FOR SPECIAL LEAVES

1. Employees

   Employee may request Leave pursuant to this Policy, when applicable, by submitting the necessary supportive documentation to immediate supervisor. Faculty, executive service, A&P and SP Employees request time off through Workday.

2. Employee's Supervisor

   Supervisor shall approve Leave requests through Workday.

## G. PROCEDURES FOR FURLOUGH

1. Furlough Plan

   The Unit Head must complete the Furlough Plan. He/she is responsible to define the potential Employee group for the purpose of assigning Furloughs based on organizational structure, work location, type of work performed, funding source, operational needs, work availability, experience, expertise, skills and competencies, state or federal requirements, ability to perform work remotely or other relevant factors related to the basis for the Furlough. The Unit Head must obtain the approval of the President or appropriate Vice President(s). Any Furlough plan requires the approval of the President.

002164

The Vice President will forward the Furlough Plan to Human Resources for review, final approval, and implementation.

Prior to implementation, Human Resources will confirm the following:

a. An Employee may only be Furloughed during those days in which the Employee is in pay status.

b. Prior to assignment of Furloughs, colleges and departments may seek and accept volunteers for Furlough.

c. In lieu of a Furlough assignment, and in consultation with Human Resources, Unit Heads have the discretion to temporarily reassign Employees to other available job duties. Such reassignments may not be permissible for Employees who work in positions funded by contracts or grants.

2. Employees on Furlough

a. Employees may not volunteer to continue to work in their positions during the assigned Furlough period.

b. Employees will not be Furloughed more than 640 hours during any six (6) month time period, prorated based on the length of the Employee's appointment period.

c. Human Resources may approve two (2) extensions of up to one hundred and sixty (160) hours each of Furlough assignment for an Employee, prorated based on length of appointment period.

d. Employees on various leaves, excluding sabbaticals, FMLA, and military, are not exempt from Furlough consideration.

e. Leave eligible Employees will continue to accrue their normal leave accruals during the Furlough.

f. Employees cannot use sick leave, annual leave, compensatory time or days designated as Employee holidays to offset a Furlough day.

g. Full Furlough:

Employees on a Full Furlough are relieved of work duties and are not authorized to perform work during the period of Furlough. To ensure compliance with this provision, the University may suspend an Employee's physical or electronic access to University resources.

h. Partial Furlough:

Employees on a Partial Furlough may not work above the effort identified in the Furlough assignment. Employees on Partial Furlough cannot make up the Furlough time by working additional hours during the pay period. If an Employee is assigned a Partial Furlough that involves a specific number of Furlough days, a supervisor has the discretion to approve a plan in which Furlough days occur on specific dates that are spread out over a set period of time.

i. The University may modify Furlough conditions, including the time period, the Employee's hours and days of work, and the assigned duties, at any time. Every effort will be made to give reasonable advance notice of such changes. There may be instances, however, when only minimal notice is possible.

3. Notifying Affected Employees of Furlough

a. The University shall provide Employees with no less than ten (10) calendar days' notice regarding a Furlough assignment. However, in extraordinary circumstances, the University may provide less than ten (10) calendar days' notice. Human Resources will provide the impacted Employee(s) with a written explanation of the circumstances qualifying the shorter notice.

   1) Full Furlough

   A notice initiating a Full Furlough assignment will include the anticipated consecutive number of hours of the Furlough.

   2) Partial Furlough

   A notice initiating a Partial Furlough shall include the anticipated number of hours of the Furlough, the applicable assigned hours and days of work, the assigned duties and a statement that the Employee may not work more than the assigned hours and days.

b. Furlough notices shall include information regarding how Employees may maintain their benefits during the Furlough.

4. Benefits

a. Employee benefits will continue during a Furlough. Consistent with normal practice for an unpaid leave of absence, Employees shall pay the Employee portion of insurance premiums out of pocket if placed on a Full Furlough or if a Partial Furlough does not generate enough income to pay the Employee portion from payroll deduction.

b.  An Employee's social security and retirement contributions shall be affected, based on actual earnings, under a Furlough. Employees' continuous service, including for retirement purposes, length of service and hire anniversary date will not be impacted by a Furlough.

*Related Information*
*38 USC 4301 et. seq.*

*Authority*
*Sections 110.118-120, Florida Statutes*
*BOG Regulation 1.001, University Board of Trustees Powers and Duties*

*History of Policy*
*New 08/23/10; Amended 12/01/15; Amended 11/01/17 (amended organizational change); Amended 09/07/18; Amended 07/24/19; Amended 12/01/20*

**APPROVED**

Michael V. Martin, President

December 1, 2020
Date

002167



| | **FGCU POLICY 3.063** | **Responsible Unit:** |
|---|---|---|
| | **Emergency Alert and Notification** | Emergency Management |

## A. POLICY STATEMENT

Florida Gulf Coast University (FGCU), upon Confirmation of a significant emergency or dangerous situation occurring on the FGCU campus involving a threat to the health and safety of individuals, will provide timely notification to the University community to take reasonable precautions. Only authorized personnel can operate, Activate, or deactivate the FGCU Alert System. This Policy establishes procedures for the authorization, activation, operation, and testing of Emergency Notification systems.

## B. REASON FOR POLICY

FGCU is committed to providing a safe working and learning environment to protect all members of the University community and to ensure compliance with federal regulations.

## C. APPLICABILITY AND/OR ACCOUNTABILITY

This Policy is applicable to all employees and students.

## D. DEFINITION OF TERMS

1. *Activate*: Initiate an action or implementation of the FGCU Alert System.

2. *Clery Act Geography*: Any physical location that is on campus (including on-campus student housing facilities); on public property within or immediately adjacent to the campus; or in or on non-campus buildings or property owned or controlled by the University.

3. *Clery Act Crime:* Crimes specified by the Clery Act that have occurred within Clery Act Geography, including:

   a. Criminal homicide, including murder, nonnegligent manslaughter, and negligent manslaughter;

   b. Sex offenses, including rape, fondling, statutory rape, and incest;

   c. Robbery;

   d. Aggravated assault;



e.  Burglary;

f.  Motor vehicle theft;

g.  Arson;

h.  Hate crimes, including the previously listed crimes as well as larceny-theft, simple assault, intimidation, or destruction/damage/vandalism of property that are motivated by bias;

i.  Dating violence, domestic violence, and stalking, as specified in the Clery Act, as amended, by the Violence Against Women Act, also referred to as "VAWA Crimes"); and

j.  Arrests and referrals for disciplinary action for certain liquor law violations, drug law violations, and weapon law violations.

4.  *Confirmation*: An FGCU official (or officials) from the list of authorized individuals in this Policy has verified that a legitimate emergency or dangerous situation exists. Confirmation does not necessarily mean that all the pertinent details are known or available.

5.  *Drills*: Tests of a single procedural operation designed to validate procedures, clarify roles or identify operational process gaps. relating to emergency response. For example, a drill to test sending one emergency alert in one system.

6.  *Emergency Notification*: An announcement to inform the University community, or segments thereof, of a significant emergency or dangerous situation involving an Immediate Threat to the health, life, or safety of the University community occurring on or immediately threatening the campus.

7.  *Exercises*: Tests of a coordination of efforts relating to emergency response. For example, sending an emergency alert from multiple systems and the emergency activation responses triggered for multiple departments.

8.  *FGCU Alert System*: A multimedia and multi-modal communication system that provides timely and accurate information about emergency situations that could affect the University, which is activated primarily for life safety situations.

9.  *Immediate Threat:* An imminent or impending threat to the health or safety of the University community.

10. *Tests*: Regularly scheduled Drills, Exercises, and appropriate after-action reviews designed to assess and evaluate emergency plans and capabilities.

11. *Timely Warning*: An alert issued to the University community warning of Clery Act

Crimes that have already occurred in or on University Clery Act Geography that pose a serious or ongoing threat to the health or safety of the University community. Timely Warnings are issued for both crimes to persons and crimes to property.

## E. PROCEDURES

1. General

   a. FGCU has a Comprehensive Emergency Management Plan (CEMP), which outlines key operational responsibilities in the event of an emergency on campus. FGCU follows specific procedures identified in the CEMP in the event of a campus emergency. The CEMP identifies key emergency support responsibilities as coordinated with the appropriate FGCU departments, as well as local, state, and federal agencies.

   b. The University community will immediately be notified through the FGCU Alert System upon the Confirmation of a significant emergency or dangerous situation involving an Immediate Threat to the health or safety of the University community occurring on the campus.

   c. In accordance with federal regulations regarding the University's emergency response and evacuation procedures, specifically emergency notification, FGCU will, without delay and taking into account the safety of the University community, determine the content of the notification, and initiate the FGCU Alert System, unless issuing a notification will, in the professional judgement of responsible authorities, compromise efforts to assist a victim or to contain, respond to, or otherwise mitigate the emergency.

2. Authority

   a. The following University personnel have the authority to Activate or initiate the FGCU Alert System:

      1) President or designee;

      2) Vice President, Administrative Services and Finance;

      3) Senior Associate Vice President, Administrative Services;

      4) Chief of Police, or designee; and

      5) Director of Emergency Management;

   b. Individuals with authority to initiate the FGCU Alert System may collaborate with the Clery Act Compliance Officer, or the Coordinator for University Communications and Media Relations, on the message to be issued.

c.  The FGCU Department of Emergency Management, the FGCU Police Department, and University Communications and Media Relations determine which notification systems will be used during an emergency. These entities work together to provide timely and accurate information to the University community. Together, they will determine how much information is appropriate to disseminate at different points of time.

3.  FGCU Alert System initiation

a.  It is imperative that the FGCU Alert System is initiated immediately upon Confirmation of an Immediate Threat. Depending on the scale and type of emergency, one or more of the notification systems identified as part of the FGCU Alert System will be used for Emergency Notifications or Timely Warnings.

b.  Testing of the FGCU Alert System will be conducted during scheduled times and dates. A timely announcement may be made to inform the University community of any upcoming Tests. The University officials with authority to issue Emergency Notifications or Timely Warnings have authority to approve these Tests.

c.  The FGCU Alert System may be deactivated in stages, depending on the scale and type of emergency. A large-scale emergency will require that some FGCU Alert Systems remain active until the current status is made available to the entire University community. For example, the FGCU Emergency homepage may be used to provide information after the campus has been deemed safe by the appropriate authority.

4.  Confirming the Existence of a Significant Emergency or Dangerous Situation

a.  All students and employees should promptly and accurately report crimes as they are or become aware of, in progress, life and death situations, crashes with injuries, and other suspected emergencies and dangerous situations to 911. Dialing 911 on campus will route information to UPD. Individuals calling from mobile phones must specify their locations and remain on the line until it is confirmed by the dispatcher.

b.  Reports of crimes and pictures of the situation in progress may also be made through the RAVE Guardian Eagle Application (RAVE) via the chat/send-a-tip feature.

c.  In response to reports of criminal activity, potential emergencies, or dangerous situations on campus, UPD will take the required action either by dispatching an officer or by asking the caller to report to UPD to file an incident report. Reporting incidents to UPD is important to facilitate timely determination of the existence of an Immediate Threat, and because it allows criminal offense information to be included in the annual disclosure of crime statistics and assessment for sending Timely Warnings to aid in the prevention of similar crimes.

5. FGCU Alert System procedures

   a. If the individuals listed in section E.2. receive information about an Immediate Threat to the FGCU campus, they will:

      1) Verify that an emerging or Immediate Threat exists;

      2) Determine which areas of campus should receive an Emergency Notification;

      3) Determine the content of the Emergency Notification;

      4) Initiate one or more of the notification systems;

      5) Distribute updates to the initial notification, if necessary; and

      6) Distribute a final notification informing the University community that the threat to the campus no longer exists.

   b. The entire University community will be notified when there is the potential for a very large segment of the University community to be affected by an Immediate Threat, or when a situation threatens the operation of the campus as a whole. FGCU Alert System messages will be used only for events that present an imminent danger to the University community or that will significantly affect university operations, such as bomb threats, road or parking closures due to an emergency, and extreme weather alerts.

   c. The University may not immediately issue an Emergency Notification for a confirmed emergency or dangerous situation if doing so would compromise efforts to assist a victim; contain the emergency; respond to the emergency; or otherwise mitigate the emergency.

      The FGCU website www.fgcu.edu and the FGCU Emergency Management website https://www.fgcu.edu/emergencymanagement/ is the primary FGCU Alert modality to keep the larger community informed during an emergency.

6. Primary and Secondary Notifications

   a. Primary

      The following notification systems will be the primary and immediate method(s) of alerting the University community about an emergency on campus:

      1) FGCU emergency homepage (fgcu.edu): The FGCU homepage will become the FGCU emergency homepage during a major emergency and will provide updates, instructions, and information to the University community.

2) Mass Notification System (Speaker Sirens): Outdoor sirens on campus will produce a loud tone indicating to seek additional information through other components of the FGCU Alert System.

3) Text Messaging: Members of the University community will receive a text message on their mobile phones with specific instructions, if they did not opt out of the service. Mobile phone numbers alerted are those on record with the University as students or employees. Up to two (2) additional phone numbers may be added using RAVE.

4) Email: Members of the University community will receive an email to their FGCU-issued email account. Up to two (2) additional email addresses may be added using RAVE.

5) National Oceanic and Atmospheric Administration (NOAA) Weather Radios: The University has NOAA programmable weather radios located in the Office of Emergency Management and UPD. In the event of severe weather, these radios will automatically sound the appropriate warning message distributed by the National Weather Service Forecast Office in Ruskin, FL.

6) RAVE: Those signed up to receive push notifications from RAVE will receive emergency updates through the application.

b. Secondary

The following notification systems are other methods FGCU may use to keep the University community informed of an emergency on campus. One or more of these systems may be used depending on the scale and size of the emergency.

1) Vehicle Public Address Speaker: If an isolated or targeted message is required, University vehicles equipped with public address speakers (e.g., FGCU police vehicles) may utilize this method.

2) Media Communication: Depending on the nature and severity of the emergency, the local media may post breaking news or periodic updates regarding an emergency at FGCU.

3) Radio (90.1 FM WGCU): Depending on the nature and severity of the emergency, WGCU and local radio news stations may carry live breaking news or periodic updates regarding an emergency on campus. Their websites may also carry live streaming audio, audio clips, or text updates.

4) Social Media: FGCU social media accounts, such as Twitter or Facebook, may be used to provide information about the emergency.

5) Desktop Alerts: Official updates during emergencies may be shared via the screens on office computers and classroom podium computers.

6) Campus Shuttle Alerts: Official updates during emergencies may be shared on shuttle buses.

c. In cases of extreme emergency, FGCU may open an emergency hotline where recorded messages of current events and instructions will be posted.

7. Testing

a. At least annually, FGCU will Test the emergency response and Emergency Notification procedures. The Test may be announced or unannounced and is designed for the assessment of emergency plans, including measuring capabilities and pre-defined goals. The Test will contain each of the following steps:

1) Schedule Tests;

2) Identify coverage concerns;

3) Identify maintenance issues; and

4) Conduct follow-through activities.

b. FGCU will document each Test conducted and retain Test documentation for seven (7) years. Test documentation will include a minimum of the following:

1) A description of the Test;

2) The date the Test was held;

3) The time the Test started and ended; and

4) Whether the Test was announced or unannounced.

8. Timely Warning

a. FGCU will issue a Timely Warning to the University community in the event it receives notice of an alleged Clery Act Crime occurring on Clery Act Geography; or non-Clery Act crimes, where the University determines, in its judgment, that the allegations present a serious or continuing threat to the University community. Timely Warnings will be issued as soon as the pertinent information is available to enable people to protect themselves and prevent similar crimes from occurring.

b. The Chief of Police or designee will decide whether or not to issue a Timely Warning on a case-by-case basis in light of all the facts surrounding a reported crime, including factors such as:

      1) The nature of the crime;

      2) The continuing danger to the University community; and

      3) The possible risk of compromising law enforcement efforts.

  c. A Timely Warning will include information that promotes safety and aids in the prevention of similar crimes from occurring such as:

      1) Date, time, and location of the reported crime;

      2) Summary of the incident;

      3) Description of the suspect and/or vehicle, if available; and

      4) Any other special instructions or incident-specific safety tips, as appropriate.

  d. A Timely Warning will never include a victim's personal identifying information.

  e. The Timely Warning will be issued using one or more of the primary and secondary notification systems identified in this Policy, in an effort to reach the entire University community.

  f. There may be circumstances when an Emergency Notification will be made, but due to the nature of the incident, the Chief of Police, or designee, will consult with the University President or designee, to determine the best content for the notification and the most effective mode of communication.

*Authority*
    *34 C.F.R. § 668.46*
    *Jeanne Clery Act, 20 U.S.C. § 1092f) et seq.*
    *BOG Regulation 1.001, University Board of Trustees Powers and Duties*
    *BOG Regulation 3.001, Campus Emergency Management*

*History of Policy*
    *New 11/15/22*

**APPROVED:**


    ___*s/Michael V. Martin*_____        November 15, 2022
    Michael V. Martin, President          Date



| **FGCU POLICY 3.064** | **Responsible Unit**: |
|---|---|
| **Clery Act** | University Police Department |

## A. POLICY STATEMENT

Florida Gulf Coast University (FGCU or University) is committed to maintaining a safe and secure environment for the University community. To that end, FGCU will comply with the provisions of the "Jeanne Clery Disclosure of Campus Security Policy and Campus Crime Statistics Act of 1998" (Clery Act), as amended. The Clery Act requires institutions of higher education that receive Title IV federal funding to report statistics on specified crimes on or near college campuses and to provide other safety and crime information to members of the campus community. This information must also be reported to the United States (U.S.) Department of Education by October 1 of each year to ensure that students, prospective students, employees, prospective employees, and visitors have access to accurate information about crimes committed on campuses and campus security policies and procedures, as well as details regarding crime prevention programming. FGCU must also inform students, employees, parents, and potential students and employees of crimes that are occurring on or around University owned or controlled property.

## B. REASON FOR POLICY

This Policy sets forth procedures intended to ensure compliance with the Clery Act and its implementing regulations.

## C. APPLICABILITY AND/OR ACCOUNTABILITY

This Policy applies to employees, students, and visitors.

## D. DEFINITION OF TERMS



1. *Campus*: For purposes of this Policy is:

   a. Any building or property owned or controlled by FGCU within the same reasonably contiguous geographical area and used by FGCU in direct support of, or in a manner related to, its educational purpose, including residence halls; and

   b. Any building or property that is within or reasonably contiguous to the area defined in subsection a. of this definition, that is owned by FGCU but controlled by another person, is frequently used by students, and supports FGCU's purposes (such as a food or other retail vendors).

2. *Campus Security Authority (CSA)*: Individuals at the University who, because of their

002084

function for the University, whether due to official job duties, ad hoc responsibilities, or volunteer engagements, have an obligation under the Clery Act to notify the University of alleged Clery Act Crimes that are reported to them in good faith, or alleged Clery Act Crimes that they may personally witness. In compliance with the Clery Act definition of a Campus Security Authority, at FGCU CSA's include, but are not limited to, members of the University Police Department (UPD), University personnel who have a responsibility for an aspect of campus security, and offices and individuals with significant responsibility for student and campus activities, as well as people or offices where policy directs students or employees to report criminal offenses. The Clery Act exempts certain individuals, when acting within the scope of their official responsibilities, from the definition of CSA's, to include pastoral counselors, professional counselors, and persons uncertified, but acting under the supervision of an exempt counselor.

3. *Clery Act Crimes*: Crimes specified by the Clery Act that have occurred within a Clery Act Reportable Location, including:

   a. Criminal homicide, including murder, nonnegligent manslaughter, and negligent manslaughter;

   b. Sex offenses, including rape, fondling, statutory rape, and incest;

   c. Robbery;

   d. Aggravated assault;

   e. Burglary;

   f. Motor vehicle theft;

   g. Arson;

   h. Hate crimes, including the previously listed crimes as well as larceny-theft, simple assault, intimidation, or destruction/damage/vandalism of property that are motivated by bias;

   i. Dating violence, domestic violence, and stalking, as specified in the Clery Act, as amended, by the Violence Against Women Act (also referred to as "VAWA Crimes"); and

   j. Arrests and referrals for disciplinary action for certain liquor law violations, drug law violations, and weapon law violations.

4. *Clery Act Reportable Location or Clery Act Geography*: any physical location that is on Campus (which includes on Campus student housing facilities); on public property within

or immediately adjacent to the Campus; in or on non-campus buildings or property owned or controlled by the University, or is considered a separate Campus location.

5. *Emergency Notification System (FGCU Alert System):* A multimedia and multi-modal communication system that provides timely and accurate information about emergency situations that could affect the University, which is activated primarily for life safety situations. Primary and/or secondary systems may be used based on the situation.

6. *Emergency Notification:* An announcement to inform the University community, or segments thereof, of a significant emergency or dangerous situation involving an immediate threat to the health, life, or safety of students or employees occurring on or immediately threatening the Campus.

7. *Official:* Any person who has the authority and the duty to act or respond to immediate threats on behalf of the University.

8. *Timely Warning:* An alert issued to the University community warning of Clery Act Crimes that have already occurred in or on Clery Act Geography that pose a serious or ongoing threat to the health or safety of students or employees and may be issued for both crimes to persons and crimes to property.

## E. PROCEDURES

1. In accordance with the requirements of the Clery Act, the University:

    a. Publishes an Annual Security Fire Safety Report (ASFSR).

    By October 1 each year, UPD will publish an ASFSR documenting three (3) calendar years of Clery Crime statistics, security policies and procedures, and information on the basic rights guaranteed to victims of VAWA Crimes. All crime statistics will be provided to the U.S. Department of Education on an annual basis. This report will be made available to all current and prospective employees and students by publication on the UPD website. Paper copies of the ASFSR will be available, upon request, from UPD. In addition, the Office of Admissions and Aid, and the Office of Human Resources publishes a link to the ASFSR on their respective websites.

    b. Identifies, notifies, and trains CSA's.

    The Clery Act Compliance Officer (CCO), in collaboration with the Human Resources, will identify positions which meet the definition of a CSA on an ongoing basis. The CCO notifies individuals in these roles of their obligations under the Clery Act to report any and all Clery Act Crimes that they witness or are reported to them, which may have occurred on or in Clery Act Geography. The University requires that all CSA's complete training on an annual basis which outlines their responsibilities and reporting requirements under the Clery Act.

c.  Issues Timely Warnings.

In accordance with the Clery Act, the University provides Timely Warnings, as detailed in FGCU Policy 3.063, Emergency Alert and Notification, alerting the University community to Clery Act Crimes which pose a serious or ongoing threat.

d.  Issues Emergency Notifications.

In accordance with the Clery Act, the University informs the University community when a significant emergency or dangerous situation involving an immediate threat to the health or safety of University faculty, staff, employees, students, and visitors occurs or is occurring on or near Campus, which may include, but are not limited to, Clery Act Crimes. An Emergency Notification may be issued for both Clery Act Crimes and other types of emergencies (e.g., fire, hurricane, infectious disease outbreak, etc.). Emergency Notifications may be tailored exclusively to the segment of the campus community at risk. The University also maintains emergency response and evacuation procedures specific to its Campus facilities. A summary of these procedures is disclosed in the ASFSR. The emergency response procedures are tested at least once, annually.

e.  Provides missing persons notification information annually in the ASFSR regarding procedures for reporting missing students in on-campus housing.

In the event that a student who resides in on-campus housing is reported as missing, the University will contact the appropriate University offices, notify local law enforcement, and notify those listed as emergency contacts for the alleged missing person.

f.  Compiles, reports, and publishes an AFSR for each on-campus student housing facility for the three (3) most recent calendar years, for which data is available.

The AFSR identifies each on-campus housing facility by name and location, and lists fire statistics for each such facility regardless of whether any fires have occurred. Additionally, the AFSR provides a description of the fire safety system in each on-campus student housing facility, including mechanisms (e.g., fire extinguishers, fire doors, posted evacuation routes, etc.) or systems related to the detection, warning, and control of a fire.

g.  Maintains a daily crime log documenting the nature, date, time, and general location of each crime reported to UPD occurring on Campus within the last sixty (60) days, and the disposition, if known, of the reported crimes.

Crimes reported will be entered into the daily crime log within two (2) business days of receiving the report. The daily crime logs are published on the UPD safety webpage, and may be requested in-person at UPD during normal business hours.

Requests for public inspection of daily crime log entries beyond sixty (60) days must be made in writing and will be made available within two (2) business days of the request.

h. Maintains a daily fire log documenting the nature of the fire, date the fire occurred, date and time the fire was reported, and general location of each fire-related incident in an on-campus student housing facility reported to any University official.

Incidents are entered into the log within two (2) business days of receiving the report. The daily fire logs for the University can be found on the UPD safety webpage, and may be requested in-person at UPD during normal business hours. Requests for public inspection of daily fire log entries beyond sixty (60) days will be made available within two (2) business days of the request.

i. Promotes educational programs to educate the University community about the Clery Act and corresponding obligations, and to promote general awareness of all crime and safety-related issues at all Campus locations.

j. Retains records required by the Clery Act and corresponding regulations for a minimum of three (3) years following the publication of the last ASFSR report to which they apply.

Supporting records maintained include, but are not limited to, copies of crime reports; the daily crime logs; records for arrests and referrals for disciplinary action; Timely Warning and Emergency Notification reports; documentation, such as letters to and from local police concerning Clery Act compliance; letters to and from CSA's; correspondence with the U.S. Department of Education regarding Clery Act compliance; and copies of notices to students and employees regarding the availability of the annual security report. The official records custodian is UPD.

2. Responsibilities

a. Employees should promptly report any activity that is perceived as criminal, potentially dangerous, or suspicious to a CSA.

b. The CCO is responsible for:

1) Overseeing the University's compliance with the Clery Act; and

2) Developing procedures for reporting crime statistics by CSA's.

c. UPD is responsible for:

1) Issuing Timely Warnings to the University community regarding Clery Act Crimes;

      2) Maintaining the fire log;

      3) Coordinating Emergency Notifications in collaboration with Emergency Management when deemed necessary and appropriate; and

      4) Maintaining the daily crime log.

  d. CSA's are responsible for:

      1) Understanding the requirements of the Clery Act pertaining to reportable crimes;

      2) Undergoing training when they assume their role(s) and on an annual basis thereafter; and

      3) Immediately reporting Clery Act Crimes to the CCO either directly or through established processes through the Office of Institutional Equity and Compliance (OIEC) or the Student Conduct Office.

*Related Information*
*Department of Education's Handbook for Campus Safety and Security Reporting*
*Clery Act Appendix for FSA Handbook*

*Authority*
*The Jeanne Clery Disclosure of Campus Security Policy and Campus Crime Statistics Act (Clery Act), 20 U.S.C. §1092(f)*
*The Higher Education Opportunity Act of 2008 (HEOA), (Public Law 110-315), 20 U.S.C. §1092(i)-(j)*
*The Violence Against Women Reauthorization Act of 2013, (Public Law 113-4)*
*The Violence Against Women Act of 1994, 42 U.S.C. §13925(a)*
*34 CFR 668.41, Reporting and Disclosure of Information*
*34 CFR 668.46, Institutional Security Policies and Crime Statistics*
*34 CFR 668.49, Institutional Fire Safety Policies and Fire Statistics*

*History of Policy*
*New 12/07/22*

**APPROVED:**

    *\*s/Michael V. Martin*         December 7, 2022
Michael V. Martin, President        Date



| | **FGCU POLICY 4.018** | **Responsible Unit**: |
| | | Office of the Ombuds |
| | **Ombuds Services for Student Concerns and Complaints** | |

## A. POLICY STATEMENT

The Office of the Ombuds is available to assist all members of the University community in addressing concerns related to the University, but it is specifically established to address student concerns and complaints. The Office of the Ombuds is a place where students may seek guidance for addressing or resolving concerns or complaints through a resource, which is confidential, neutral, informal, and independent. The Ombuds assists students in reaching mutually acceptable solutions in order to find fair and equitable resolutions to concerns that arise at the University.

The services of the Ombuds does not replace other processes at the University, but is a voluntary resource. While the Ombuds is available for initial consultation, the Ombuds does not assist with conflicts, complaints, or disputes as governed by collective bargaining agreements or regulations or policies. Specifically, the Ombuds does not have authority to assist with sexual violence or harassment under Title IX, or discrimination, harassment, or retaliation issues arising under FGCU Regulation 1.003, Non-Discrimination, Anti-Harassment, and Sexual Misconduct, and its corresponding policy, FGCU Policy 1.006, Non-Discrimination, Anti-Harassment, and Sexual Misconduct. The Ombuds serves as an information and communication resource. The Ombuds also provides data to the University administration related to trends or patterns that are noted in order to enhance campus climate. The Ombuds advocates for positive systems changes, when appropriate, without disclosing confidential communications, except as required by law.

## B. REASON FOR POLICY

This Policy implements FGCU Regulation 4.004, Ombuds Services for Student Concerns and Complaints, and provides a process for students to utilize the services of the University Ombuds for concerns or complaints relating to the student's access to course and credit granted toward a degree or certain other issues that have or can have an effect on the student's participation or ability to participate in University activities.



## C. PROCEDURES

1. A student may bring to the Ombuds concerns or complaints for assistance in addressing the issue by various means, including, but not limited to:

   a. Listening and understanding issues while remaining neutral with respect to the facts;

b.  Assisting in reframing issues and developing and helping individuals evaluate options;

c.  Guiding or coaching individuals to deal directly with other parties, including the use of formal resolution resources of the University;

d.  Referring individuals to appropriate resolution resources;

e.  Assisting in surfacing issues to formal resolution channels; and

f.  Facilitating informal resolution processes.

2.  The Ombuds shall have access to all levels within the campus community and authorization to obtain records necessary for the resolution of concerns, except as prohibited by University policy or regulation or state or federal law.

3.  The Ombuds follows the International Ombudsman Association (IOA) Standards of Practice and Code of Ethics (unless superseded by University policies or regulations or state or federal law.) The four (4) standards followed are as follows:

a.  Independence

   The Ombuds functions independently and outside of existing departmental structures, and reports to the President. The Ombuds does not engage in any situation that could create a conflict of interest.

b.  Confidentiality

   The Ombuds does not disclose information provided in confidence unless the individual requests it and the Ombuds determines it to be appropriate, the Ombuds asks for and receives permission for disclosure from the individual, or the Ombuds determines that there is an imminent risk of serious harm, or as otherwise required by law. If the Ombuds pursues an issue systemically, the Ombuds does so without revealing the identity of a complainant or a singular situation that could be associated with a particular individual(s), unless the Ombuds has obtained the individual's permissions to do so or as required by law.

c.  Impartiality/Neutrality

   The Ombuds is an impartial resource and does not serve as an advocate for any member of the community or any party in a dispute or conflict. The goal of the Ombuds is to promote fair and equitable resolutions to problems and to help the University community members reach satisfactory outcomes.

d. Informality

The Ombuds functions on an informal basis by such means as listening, providing
and receiving information, reframing issues, developing options, referral, third-party
intervention, shuttle diplomacy, and systems change. The Ombuds does not
participate in any formal administrative, academic, or contractual processes, nor does
the Ombuds maintain detailed records. The Ombuds does not make judgments or
binding decisions, and does not mandate policies or formally adjudicate issues. The
Ombuds provides referrals and informal assistance only and has no authority to make
decisions on behalf of the University, including situations where the dispute involves
or alleges violations of laws, regulations, or policies.

4. In carrying out their duties, the Ombuds does not:

   a. Serve as an advocate or representative for any person in any case;

   b. Offer legal advice;

   c. Provide psychological counseling;

   d. Establish, change, or waive policies;

   e. Rule or decide facts in a matter; or

   f. Take formal complaints or notice for the University.

5. Retaliation against an individual for consulting with or utilizing the services of the
   Ombuds is prohibited.

*Authority*
*Sections 1002.21(5) and 1006.51, Florida Statutes*
*BOG Regulation 1.001, University Board of Trustees Powers and Duties*
*BOG Regulation 6.011, Student Ombudsman*
*FGCU Regulation 4.004, Student Disputes Resolution*

*History of Policy*
*New 06/14/22*

**APPROVED**

   *s/Michael V. Martin*           June 14, 2022
Michael V. Martin, President        Date

Florida Gulf Coast University                Page 3 of 3
Policy 4.018 Ombuds Services for Student Concerns and Complaints
GC694623_4

002092