202234965    VH

# FLORIDA COMMISSION ON HUMAN RELATIONS
4075 Esplanade Way, Room 110, Tallahassee, Florida 32399

RECEIVED

| | Date Stamp (FCHR Use Only) |
|---|---|
| | 2022 MAY 16  PM 12: 25 |

### WHISTLE-BLOWER ACT RETALIATION
### CHARGE OF DISCRIMINATION

| A. PERSONAL INFORMATION | | FCHR No. | 201919945 | MS |
|---|---|---|---|---|
| **Name**<br>Ms. Kelli Smith | | **E-Mail Address** | **Date of Birth** | |
| **Mailing Address**<br>■■■■■ | | **Home Telephone Number (area code)** | | |
| **City, State, and Zip Code**<br>■■■■ | | **Work (if possible to call you there)**<br>- | | |

| B. LIST THE STATE AGENCY OR INDEPENDENT CONTRACTOR THAT DISCRIMINATED AGAINST YOU. | | |
|---|---|---|
| **Name**<br><br>BOARD OF TRUSTEES OF THE FLORIDA GULF COAST UNIVERSITY | **Contact Person**<br><br>Vee Leonard, Esq. | **Telephone Number**<br>+1 (239) 590-1101 |
| **Street Address**<br>10501 FGCU Blvd. S. | **City, State, and Zip Code**<br>Fort Myers, Florida 33965 | **County**<br>Lee |

| C. CAUSE OF DISCRIMINATION BASED ON – Check appropriate box (es) | DATE MOST RECENT DISCRIMINATION TOOK PLACE (month, day, year) |
|---|---|
| ☒ RETALIATION | 3/29/22 |

## D. DISCRIMINATION STATEMENT

I believe that I have been discriminated and retaliated against in violation of the Public Whistle-blower's Act, §§112.3187-112.31895, Florida Statutes (PWA) for the following reasons:

I, Kelli Smith, was employed by Florida Gulf Coast University, Respondent, as the Chief of its police department. I began my employment on May 3, 2021. I immediately recognized that the respondent was non-compliant with the Jeanne Clery Disclosure of Campus Security Policy and Crime Statistics Act (Clery Act) and within the first week of employment began expressing my concern to my leadership. The Clery Act is a federal law that requires colleges to report crimes that occur on campus and surrounding off-campus areas, especially if there is an on-going threat or a pattern of crimes. These statistics along with school safety policies are required to be published in an Annual Security Report (ASR), which would be found on a school's website. The Clery Act also requires schools to send timely warnings to the school community when there are known risks to public safety on campus. These risks include sexual assault(s), homicides and auto burglaries among others. Additionally, alcohol and drug violations are also to be published. The Respondent was not complying with the Clery mandates. The mandates are institutionally wide requiring other departments like athletics, residence life, Student Conduct (including Greek Life) to notify the Crime Collection Data Center (FGCUPD) of violations in a timely manner to ensure public safety. Should the Department of Education (DOE) conduct an audit a single violation is a fine in excess of $59,000. The Respondent had already had an audit in 2019 by the Department of Education regarding the ASR publication not meeting the requirements. Between August and October, 2021 there were several off campus sexual assault reports taken by the surrounding jurisdictions alleging members of fraternities were drugging girls and sexually assaulting them. In most instances, FGCU resident life staff was aware of these assaults and was not notifying the Clery Crime Collection Data Center (FGCUPD) in a timely manner or at all. This failure to notify created a public safety threat to any FGCU student attending fraternity parties and being potentially drugged and assaulted. FGCUPD could not evaluate if there was a community threat without the notification. I notified the respondent and FGCU General Counsel that I was concerned we were not doing our part and violating Clery Compliance. A meeting was held on November 19, 2021 with University Leadership including all of FGCU General Counsel, Title IX, and 2 members of the President's

FCHR Charge Form – Revised January 9, 2015


EXHIBIT
Smith

500004

Cabinet. My concerns were dismissed. Internally in the Police Department, I was requiring staff to become more Clery Compliance focused and to begin writing reports and documenting incidents.

During the course of my 11 months of employment, I recommended that a Clery Compliance Subject Matter Expert be brought into train members of the institution since DOE had already examined the respondent's lack of compliance in 2019. On January 21, 2022 an email was sent by Sara Stensrud to FGCU General Counsel and Presidential Cabinet Member Vee Leonard explaining my recommendation of an external Clery Compliance Subject Matter Expert for institutional training and the need to "reset our thoughts on Clery compliance". GC Leonard replied that I overstepped in reaching out to outside legal counsel and referred to University policy. I still continued to advocate for this training and continued to keep on the 1:1 agenda for my meetings with my supervisor up through my termination including my final formal agenda March 22, 2022 for discussion. At one point, my supervisor stated, "we all know about the 2019 audit and it's old news". I repeatedly expressed my concern for the University's failure to comply with the Clery Act. I repeatedly explained that with 1 violation of more than $59,000, it would be easy to amass fines into the millions of dollars and damage our reputation because FGCU has not been compliant for years. I pointed out that FGCU could lose financial aid as a result of a DOE audit.

On March 9, 2022 (5) white male officers went directly to the President to complain about morale as the officers were being required to do more to ensure Clery compliance and accountability among other things. These (5) officers went above the Chief of Police (white female), the Associate Vice President (White Female), and Vice President (Hispanic Male) to the white male University President.

Subsequently, one Captain was made interim Chief of Police and one of the other white males was promoted to interim Lt. 4 of the 5 white males have been assigned more favorable shifts allowing for (3) day weekends, salary increases or both, while other department members were not afforded the same opportunities. The respondent's sworn UPD leadership is now all white males.

It is important to note that Captain Rispoli was assigned to conduct an internal investigation on November 10, 2021 on W/M Officer William Winning and W/M Christopher Palmer. The Office of Student Conduct informed me they learned of a statement in which an FGCU Officer made the comment "Which one of you is Jackie Chan" to students in a car with Nunchucks. The Office Conduct staff advised that even though none of the students were Asian, this comment was unprofessional and inappropriate. He was assigned this task due to a personal relationship that Captain Slapp had with Officer Palmer. Officer Palmer's family company was doing a large scale pool job for Captain Slapp. Captain Rispoli expressed his frustration at being assigned to conduct this type of investigation. He was registered to go to training but withdrew from it.

Within days of the officers being notified that they were under investigation, I would come into the women's restroom to find feces and urine in the toilet. Urine would also be on the seat. I was typically always the first person in the Women's Room at 0730 AM. I evaluated when this would occur and it aligned with the shift rotation of Officer Palmer and Officer Winning. UPD and janitorial staff were the only ones with access to this bathroom at night. I informed AVP Stensrud this was occurring and that I even bought cleaning supplies and placed a sign in the Women's Restroom encouraging cleanliness. I spoke with Captain Slapp and Captain Rispoli who began checking the men's room each morning. It was always found clean. I addressed this issue with the sergeants on a November 30, 2022 meeting and was synopsized in meeting notes taken by Nancy Rounsifer. The sergeants addressed their squads and were to begin checking the bathrooms before the end of the shift.

In early December while Captain Rispoli was conducting the investigation, he made a biased based statement and was issued a verbal counseling. He told a dark complected Dominican Officer wearing a lime green shirt that he looked like a landscaper. This comment along with the investigation indicated that FGCUPD at minimum demonstrated implicit bias at the highest level of rank, but it appeared to be deeper than that with what was occurring in the Women's Restroom. I expressed this to AVP Stensrud in our conversations.

On March 29, 2022 I was terminated  I was replaced as Chief of Police by a white male.  I always received good to very good performance reviews from the Respondent including a $10,000 a year pay increase 23 days prior to termination. Due to the countless times including just prior to my termination that I expressed my concern about lack of Clery Compliance , I was subsequently terminated on March 29, 2022.

My demands for Clery Act compliance caused the Respondent to terminate my employment and was fueled by an institutional history of gender discrimination in a job class dominated by white males.

Therefore, I allege the Respondent has violated the PWA. In connection with these claims, I request all rights and remedies afforded to me under the PWA, including temporary reinstatement.

**I REQUEST TO BE AFFORDED FULL RELIEF TO WHICH I AM ENTITLED TO UNDER THE LAW(S).**

**E. VERIFICATION. Under penalties of perjury, I declare that I have read the foregoing complaint of discrimination and that the facts stated in it are true. I will advise the agency if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.**

| SIGNATURE OF COMPLAINANT | DATE |
|---|---|
| *[signature]* | 15 May 2022 |

STATE OF FLORIDA

COUNTY OF SARASOTA

The foregoing instrument was acknowledged before me, an officer duly authorized to take acknowledgements in the  State  and  County  stated  above,  this _15_ day of _MAY_____, 2022,  by _KELLI J SMITH_____, who is

☑ Personally Known or ☐ Produced ID _____.

_CATHERINE DORN_

Typed/Printed Name of Notary

*[signature]*

Signature and Seal of Notary

My Commission Expires:

CATHERINE DORN
Notary Public-State of Florida
Commission # HH 238334
My Commission Expires
March 09, 2026

FCHR Charge Form – Revised January 9, 2015

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☒ FEPA ☒ EEOC | 510-2023-02457 |

|  | FCHR |  | and EEOC |
|---|---|---|---|

EXHIBIT _local Agency, if any_

| Name (Indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| **Ms. Kelli Smith** @gmail.com | | |

PENGAD 800-631-6989

| Street Address | City, State and ZIP Code |
|---|---|
| **(c/o Yormak Employment & Disability Law, 27200 Riverview Center Blvd., Suite 109, Bonita Springs, Florida 34134)** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (*If more than two, list under PARTICULARS below.*)

| Name | No. | Phone No. (Include |
|---|---|---|
| **The Florida Gulf Coast University Board of Trustees** | **500+** | **(239) 590-1101** |

| Street Address | City, State and ZIP Code |
|---|---|
| **10501 FGCU Blvd. S., Fort Myers Florida 33965** | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| | Earliest — Latest |

| X RACE | COLOR | X SEX | RELIGION | NATIONAL ORIGIN | **3/10/22** | **3/10/22** |
|---|---|---|---|---|---|---|

| X RETALIATION | AGE | DISABILITY | GENETIC INFORMATION |
|---|---|---|---|

OTHER (Specify)                                                                    ☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

**Statement of Harm**: I, Kelli Smith, was employed by Florida Gulf Coast University, Respondent, as the Chief of its police department. I began my employment on May 3, 2021. I immediately recognized that the Respondent was non-compliant with the Jeanne Clery Disclosure of Campus Security Policy and Crime Statistics Act (Clery Act) and within the first week of employment began expressing my concern to my leadership.

The Clery Act is a federal law that requires colleges to report crimes (including but not limited to dating violence, domestic violence, sexual assault, and stalking) that occur on campus and surrounding off-campus areas, especially if there is an on-going threat or a pattern of crimes. Under the Clery Act, a group of individuals called campus security authorities (including campus policy/security, individuals with a security function, individuals written into campus security policy as someone to whom members of the community should make crime reports, and officials with significant responsibility for student and campus activities) are required to report Clery Act crimes to the designated crime collection body at the institution. These statistics along with school safety policies are required to be published in an Annual Security Report (ASR), which would be found on a school's website. The Clery Act also requires schools to send timely warnings to the school community when there are known risks to public safety on campus. These risks include sexual assault(s), homicides and auto burglaries among others. Under the Clery Act, institutions like the Respondent must provide victims of dating violence, domestic violence, sexual assault, and stalking with information in writing about options for, available assistance in, and how to request changes to academic, living, transportation, and working accommodations, as well as other protective measures. Similarly, under Title IX, when an institution has actual knowledge of an incident, the Title IX coordinator provides the reporting party with information on supportive measures, which are non-disciplinary, non-punitive, individualized services offered as appropriate, as

EEOC-MDO
Received 12-29-2022

001332

reasonably available, and without fee or charge. Title IX regulations require educational institutions to address incidents of sexual assault and sexual harassment involving both students and employees. The Respondent was required to issue Clery warnings where a Clery crime was committed, on campus, that was reported to the Respondent and represents a serious or continuing threat to students and employees.

The Respondent was not complying with the Clery mandates. The mandates are institutionally wide requiring other departments like athletics, residence life, Student Conduct (including Greek Life) to notify the Crime Collection Data Center (FGCUPD) of violations in a timely manner to ensure public safety. Should the Department of Education (DOE) conduct an audit a single violation is a fine in excess of $59,000. The Respondent had already had an audit in 2019 by the Department of Education regarding the ASR publication not meeting the requirements. Between August and October 2021 there were several off campus sexual assault reports taken by the surrounding jurisdictions alleging members of fraternities were drugging girls and sexually assaulting them. In most instances, FGCU resident life staff was aware of these assaults and was not notifying the Clery Crime Collection Data Center (FGCUPD) in a timely manner or at all. This failure to notify created a public safety threat to any female FGCU student attending fraternity parties and being potentially drugged and assaulted. FGCUPD could not evaluate if there was a community threat to students and female employees without the notification. I notified the Respondent and FGCU General Counsel that I was concerned we were not doing our part and violating Clery Compliance by failing to have proper reporting that would protect the community – and particularly females – from sexual harassment, assault and violence. A meeting was held on November 19, 2021 with University Leadership including all of FGCU General Counsel, Title IX, and 2 members of the President's Cabinet. My concerns about the Respondent not doing enough to prevent sexual harassment, assault and violence against female students and employees were dismissed, even though sexual harassment includes sexual assault, dating violence, domestic violence, or stalking as those offenses are defined in the Clery Act, 20 U.S.C. § 1092(f), and the Violence Against Women Act, 34 U.S.C. § 12291(a)). Internally in the Police Department, I was requiring staff to become more Clery compliance focused and to begin writing reports and documenting incidents so that students and employees were protected and the law was complied with.

During the course of my 11 months of employment, I recommended that a Clery Compliance Subject Matter Expert be brought into train members of the institution since DOE had already examined the Respondent's lack of compliance in 2019. On January 21, 2022, an email was sent by Sara Stensrud to FGCU General Counsel and Presidential Cabinet Member Vee Leonard explaining my recommendation of an external Clery Compliance Subject Matter Expert for institutional training and the need to "reset our thoughts on Clery compliance." GC Leonard replied that I overstepped in reaching out to outside legal counsel and referred to University policy. I still continued to advocate for this training and continued to keep on the 1:1 agenda for my meetings with my supervisor up through my termination including my final formal agenda March 22, 2022 for discussion. At one point, my supervisor stated, "we all know about the 2019 audit and it's old news." I repeatedly expressed my concern for the University's failure to comply with the Clery Act and that it was putting female students and employees at risk.

Additionally, on March 9, 2022, five (5) white male officers went directly to the President to complain about morale as the officers were being required to do more to ensure Clery compliance and accountability among other things. These officers went above the Chief of Police (white female), the Associate Vice President (White Female), and Vice President (Hispanic Male) to the white male University President. Subsequently, one Captain was made interim Chief of Police and one of the other white males was promoted to interim lieutenant. Four of the five white males have been assigned more favorable shifts allowing for (3) day weekends, salary increases or both, while other department members were not afforded the same opportunities. The Respondent's sworn UPD leadership is now all white males.

It is important to note that Captain Rispoli was assigned to conduct an internal investigation on November 10, 2021 on W/M Officer William Winning and W/M Christopher Palmer. The Office of Student Conduct informed me they learned of a statement in which an FGCU Officer made the comment "Which one of you is Jackie Chan" to students in a car with Nunchucks. The Office Conduct staff advised that even though none of the students were Asian, this comment was unprofessional and inappropriate. He was assigned this task due to a

personal relationship that Captain Slapp had with Officer Palmer. Officer Palmer's family company was doing a large-scale pool job for Captain Slapp. Captain Rispoli expressed his frustration at being assigned to conduct this type of investigation. He was registered to go to training but withdrew from it.

Within days of the officers being notified that they were under investigation, I would come into the women's restroom to find feces and urine in the toilet. Urine would also be on the seat. I was typically always the first person in the Women's Room at 0730 AM. I evaluated when this would occur and it aligned with the shift rotation of Officer Palmer and Officer Winning. UPD and janitorial staff were the only ones with access to this bathroom at night. I informed AVP Stensrud this was occurring and that I even bought cleaning supplies and placed a sign in the Women's Restroom encouraging cleanliness. I spoke with Captain Slapp and Captain Rispoli who began checking the men's room each morning. It was always found clean. I addressed this issue with the sergeants on a November 30, 2021 meeting and was synopsized in meeting notes taken by Nancy Rounsifer. The sergeants addressed their squads and were to begin checking the bathrooms before the end of the shift.

In early December 2021, while Captain Rispoli was conducting the investigation, he made a biased based statement and was issued a verbal counseling. He told a dark complected Dominican Officer wearing a lime green shirt that he looked like a landscaper. This comment along with the investigation indicated that FGCUPD at minimum demonstrated implicit bias at the highest level of rank, but it appeared to be deeper than that with what was occurring in the Women's Restroom. I expressed this to AVP Stensrud in our conversations.

On March 29, 2022, I was terminated. I was replaced as Chief of Police by a white male. I always received good to very good performance reviews from the Respondent including a $10,000 a year pay increase 23 days prior to termination. Due to the countless times including just prior to my termination that I expressed my concern about lack of Clery Compliance, I was subsequently terminated on March 29, 2022. My demands for Clery Act compliance caused the Respondent to terminate my employment and was fueled by an institutional history of gender discrimination in a job class dominated by white males.

**Respondent's reason for Adverse Action:** Morale.

**Statement of Discrimination:** I allege that the Respondent subjected me to discrimination based upon my age. I allege that the Respondent engaged in discriminatory employment practices based upon my gender, and retaliated against me when I objected to the same. Specifically, the Respondent's actions violated Title VII, and the FCRA, both as amended.

| | |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements STATE OF FLORIDA COUNTY OF MARTIN |
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| 19 Dec 22. _Date_          _Charging Party Signature_ | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE 12/19/22 |

CATHERINE DORR
Notary Public-State of Florida
Commission # HH 238334
My Commission Expires
March 09, 2028



EEOC-MDO
Received 12-29-2022

### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### FORT MYERS DIVISION

| | |
|---|---|
| **KELLI SMITH**, an individual, | **CIVIL ACTION** |
| Plaintiff, | |
| | **Case No. 2:23-cv-840** |
| v. | |
| | **Judge:** |
| **THE FLORIDA GULF COAST UNIVERSITY BOARD OF TRUSTEES**, a political subdivision of the State of Florida, | **Mag. Judge:** |
| Defendant. | |



EXHIBIT
83
Kelli Smith

### COMPLAINT AND DEMAND FOR JURY TRIAL

**NOW COMES** the Plaintiff, **KELLI SMITH** ("**SMITH**"), by and through undersigned counsel, and states the following for her Complaint:

### CAUSES OF ACTION

1. This is an action brought under Title VII of the Civil Rights Act of 1964 ("Title VII"), Title IX of the Educational Amendments of 1972, 20 U.S.C. §§1681 et. seq. ("Title IX") and Florida Civil Rights Act ("FCRA") for (1) unlawful gender discrimination in violation of Title VII, (2) unlawful gender discrimination in violation of the FCRA, (3) unlawful retaliation in violation of Title VII, (4) unlawful retaliation in violation of the FCRA, and (v) unlawful retaliation in violation of Title IX.

1

## PARTIES

2.     The Plaintiff, **KELLI SMITH** ("**SMITH**") is an individual and at all material times was a resident of Florida employed by the Defendant.

3.     The Defendant, **THE FLORIDA GULF COAST UNIVERSITY BOARD OF TRUSTEES** ("FGCU" or "Defendant") was and is a public entity and the duly empowered governing authority for FGCU. FGCU is a public institution of higher education located in Fort Myers, Florida

## JURISDICTION AND VENUE

4.     This Court has jurisdiction of this matter under 28 U.S.C. §1331.

5.     This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367.

6.     Venue is proper in the United States District Court for the Middle District of Florida because the Plaintiff worked in, and the Defendant conducts business in, and some or all of the events giving rise to Plaintiff's claims occurred in Lee County, Florida, which is within the Middle District of Florida. Venue is proper in the Fort Myers Division under Local Rule 1.04 since Lee County is within the Fort Myers Division.

7.     **SMITH** received her Notice of Right to Sue from United States Equal Employment Opportunity Commission ("EEOC") on or about July 20, 2023. A true and accurate copy of the Notice of Right to Sue is attached as Exhibit 1.

## GENERAL ALLEGATIONS

8.    **SMITH** is a female person and began her employment with the Defendant on May 3, 2021.

9.    **SMITH** was employed as the Defendant's Chief of Police.

10.    **SMITH** always performed her assigned duties in a professional manner and was very well qualified for her position.

11.    **SMITH** received good to very good performance reviews until she engaged in statutorily protected activity.

12.    Upon beginning her employment, **SMITH** immediately recognized that the Defendant was non-compliant with the Jeanne Clery Disclosure of Campus Security Policy and Crime Statistics Act (Clery Act) and within the first week of employment began expressing her concern about this to the Defendant's leadership.

13.    The Clery Act is a federal law that requires colleges to report crimes (including but not limited to dating violence, domestic violence, sexual assault, and stalking) that occur on campus and surrounding off-campus areas, especially if there is an on-going threat or a pattern of crimes.

14.    Under the Clery Act, a group of individuals called campus security authorities (including campus policy/security, individuals with a security function, individuals written into campus security policy as someone to whom members of the community should make crime reports, and officials with significant responsibility for

3

student and campus activities) are required to report Clery Act crimes to the designated crime collection body at the institution.

15.  These statistics along with school safety policies are required to be published in an Annual Security Report (ASR), which would be found on a school's website.

16.  The Clery Act also requires schools to send timely warnings to the school community when there are known risks to public safety on campus. These risks include sexual assault(s), homicides and auto burglaries among others. Under the Clery Act, institutions like the Defendant must provide victims of dating violence, domestic violence, sexual assault, and stalking with information in writing about options for, available assistance in, and how to request changes to academic, living, transportation, and working accommodations, as well as other protective measures.

17.  Similarly, under Title IX, when an institution has actual knowledge of an incident, the Title IX coordinator provides the reporting party with information on supportive measures, which are non-disciplinary, non-punitive, individualized services offered as appropriate, as reasonably available, and without fee or charge.

18.  Title IX regulations require educational institutions to address incidents of sexual assault and sexual harassment involving both students and employees.

19.  The Defendant was required to issue Clery warnings where a Clery crime was committed, on campus, that was reported to the Defendant and represents a serious or continuing threat to students and employees, but the Defendant was not complying with the Clery mandates.

Case 2:23-cv-00840-JES-KCD    Document 37-9    Filed 03/28/25    Page 12 of 43 PageID
882
Case 2:23-cv-00840-JES-KCD    Document 1    Filed 10/05/23    Page 5 of 20 PageID 5

20.     The mandates are institutionally wide requiring other departments like athletics, residence life, Student Conduct (including Greek Life) to notify the Crime Collection Data Center (FGCUPD) of violations in a timely manner to ensure public safety. Should the Department of Education (DOE) conduct an audit a single violation is a fine in excess of $59,000.

21.     When **SMITH** began her employment, the Defendant had already had an audit in 2019 by the Department of Education regarding the ASR publication not meeting the requirements.

22.     Between August and October 2021, there were several off campus sexual assault reports taken by the surrounding jurisdictions alleging members of the Defendant's fraternities were drugging female students and sexually assaulting them.

23.     In most instances, FGCU resident life staff was aware of these assaults but was not notifying the Clery Crime Collection Data Center (FGCUPD of which **SMITH** was the chief) in a timely manner or at all.

24.     This failure to notify created a public safety threat to any of the Defendant's female students attending fraternity parties and being potentially drugged and assaulted.

25.     FGCUPD could not evaluate if there was a community threat to students and female employees without the notification.

26.     **SMITH** notified the Defendant and FGCU's General Counsel that she was concerned the Defendant was violating Clery by failing to have proper reporting

that would protect the community – and particularly females – from sexual harassment, assault and violence.

27.    A meeting was held on November 19, 2021 with Defendant's leadership, including all of FGCU General Counsel, Title IX, and 2 members of the President's Cabinet. **SMITH** was also present.

28.    During that meeting, **SMITH** expressed her concerns about the Defendant's Clery noncompliance since it was not doing enough to prevent sexual harassment, assault and violence against female students and employees were dismissed, even though sexual harassment includes sexual assault, dating violence, domestic violence, or stalking as those offenses are defined in the Clery Act, 20 U.S.C. § 1092(f), and the Violence Against Women Act, 34 U.S.C. § 12291(a)).

29.    Internally in the Police Department, **SMITH** was requiring staff to become more Clery compliance-focused and to begin writing reports and documenting incidents so that students and employees were protected and the law was complied with, but this was not well-received by the Defendant.

30.    **SMITH** also recommended that a Clery compliance subject matter expert be brought into train Defendant's employees since the DOE had already examined the Defendant's lack of compliance in 2019.

31.    On January 21, 2022, an email was sent by Sara Stensrud to FGCU General Counsel and Presidential Cabinet Member Vee Leonard explaining **SMITH**'s recommendation of an external Clery compliance subject matter expert for

institutional training and the need to "reset [Defendant's] thoughts on Clery compliance."

32.     Ms. Leonard replied that **SMITH** had overstepped by making such a suggestion and by reaching out to legal counsel.

33.     However, **SMITH** still continued to advocate for this training and continued to keep it on the agenda for her meetings with her supervisor up through her termination. This included **SMITH**'s final formal agenda on March 22, 2022 listing Clery compliance as a matter for discussion.

34.     However, the Defendant refused, and at one point a supervisor stated, "we all know about the 2019 audit and it's old news."

35.     But **SMITH** repeatedly expressed her concern for the Defendant's failure to comply with the Clery Act and that it was putting the Defendant's female students and employees at risk, which is a violation of Title IX.

36.     Additionally, on March 9, 2022, five (5) white male officers went directly to the President to complain about morale as the officers were being required to do more to ensure Clery compliance and accountability among other things.

37.     These officers went above the Chief of Police (**SMITH**, a white female), the Associate Vice President (white female), and Vice President (hispanic male) to the Defendant's President (white male). When **SMITH** was notified by VP Vazquez and AVP Stensrud that the white male officers went to the President to complain about

Case 2:23-cv-00840-JES-KCD    Document 37-9    Filed 03/28/25    Page 15 of 43 PageID
925
Case 2:23-cv-00840-JES-KCD    Document 1    Filed 10/05/23    Page 8 of 20 PageID 8

morale, Stensrud advised her that this was part of the "boys club" and pointed in an upward motion towards the President's office.

38.    Subsequently, one captain was made interim Chief of Police and one of the other white males was promoted to interim lieutenant.

39.    Four of the five white males have been assigned more favorable shifts allowing for (3) day weekends, salary increases or both, while other department members were not afforded the same opportunities. The Defendant's sworn UPD leadership is now all white males.

40.    Furthermore, **SMITH** had raised objections as to Captain Rispoli, who was assigned to conduct an internal investigation on November 10, 2021 on Officers William Winning (white male) and Christopher Palmer (white male).

41.    The Office of Student Conduct informed **SMITH** that they learned of a statement in which an FGCU Officer made the comment "Which one of you is Jackie Chan" to students in a car with Nunchucks. The Office Conduct staff advised that even though none of the students were Asian, this comment was unprofessional and inappropriate. He was assigned this task due to a personal relationship that Captain Slapp had with Officer Palmer. Officer Palmer's family company was doing a large-scale pool job for Captain Slapp. Captain Rispoli expressed his frustration at being assigned to conduct this type of investigation. He was registered to go to training but withdrew from it.

42.    Within days of the officers being notified that they were under investigation, **SMITH** would come into the women's restroom to find feces and urine in the toilet. Urine would also be on the seat.

43.    **SMITH** was typically always the first person in the women's restroom at 7:30 A.M.

44.    **SMITH** evaluated when this would occur and it aligned with the shift rotation of Officer Palmer and Officer Winning. UPD and janitorial staff were the only ones with access to this bathroom at night.

45.    **SMITH** informed AVP Stensrud this was occurring and that **SMITH** had even bought cleaning supplies and placed a sign in the women's restroom encouraging cleanliness.

46.    **SMITH** spoke with Captain Slapp and Captain Rispoli who began checking the men's restroom each morning, but it was always found clean.

47.    **SMITH** addressed this issue with the sergeants on a November 30, 2021 meeting and the sergeants addressed their squads and were to begin checking the bathrooms before the end of the shift.

48.    In early December 2021, while Captain Rispoli was conducting the investigation, he made a biased based statement and was issued a verbal counseling. He told a dark complected officer of Dominican national origin wearing a lime green shirt that he looked like a landscaper. This comment along with the investigation indicated that FGCUPD at minimum demonstrated implicit bias at the highest level

of rank, but it appeared to be deeper than that with what was occurring in the women's restroom. **SMITH** expressed this to AVP Stensrud in many of their conversations.

49.     On March 29, 2022, the Defendant terminated **SMITH**'s employment.

50.     The Defendant replaced **SMITH** with a white male.

51.     **SMITH** had always received good to very good performance reviews from the Defendant including a $10,000 a year pay increase 23-days prior to her termination.

52.     Due to the countless times that **SMITH** expressed her concern about lack of Clery Compliance (and gender-based harassment), including just prior to her termination, she was subsequently terminated on March 29, 2022.

## COUNT I – VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, GENDER DISCRIMINATION

53.     Plaintiff incorporates by reference Paragraphs 1-11 and 36-52 of this Complaint as though fully set forth below.

54.     **SMITH** is a female and as such, is a member of a protected class.

55.     At all material times, **SMITH** was an employee and the Defendant was her employer covered by and within the meaning of Title VII of the Civil Rights Act of 1963, 42 U.S.C §2000e.

56.     **SMITH** was, and is, qualified for the positions that she held with the Defendant.

57.     **SMITH** has endured disparate treatment while employed with the Defendant, thereby altering the terms and conditions of her employment.

58.    The acts, failures to act, practices and policies of the Defendant set forth above constitute intentional discrimination on the basis of **SMITH**'s gender in violation of Section 703 of Title VII, 42 U.S.C. § 2000e-2.

59.    As a direct and proximate result of the violations of 42 U.S.C. § 2000e et seq. as referenced and cited herein, **SMITH** has lost benefits and privileges of her employment and has been substantially and significantly injured in her career path.

60.    As a direct and proximate result of the violations of 42 U.S.C. § 2000e et seq. as referenced and cited herein, and as a direct and proximate result of the prohibited acts perpetrated against her, **SMITH** is entitled to all relief necessary to make her whole as provided for under 42 USC § 2000e et seq.

61.    As a direct and proximate result of the Defendant's actions, **SMITH** has suffered damages, including but not limited to, a loss of employment opportunities, loss of past and future employment income and fringe benefits, humiliation, and non-economic damages for physical injuries, mental and emotional distress.

62.    **SMITH** has exhausted her administrative remedies and this count is timely brought.

**WHEREFORE**, Plaintiff requests trial by jury of all issues so triable as of right, and:

i.    Back pay and all other benefits, perquisites and other compensation for employment which plaintiff would have received, plus interest, including but not limited to lost salary and bonuses;

ii.    Front pay, including raises, benefits, insurance costs, benefits costs, and retirement benefits;

iii.    Reimbursement of all expenses and financial losses Plaintiff has incurred as a result of Defendant's actions;

iv.    Reasonable attorney's fees plus costs;

v.    Compensatory damages, and;

vi.    Such other relief as this Court shall deem appropriate.

## COUNT II – VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992, GENDER DISCRIMINATION

63.    Plaintiff incorporates by reference Paragraphs 1-11 and 36-52 of this Complaint as though fully set forth below.

64.    **SMITH** is a female and as such, is a member of a protected class.

65.    At all material times, **SMITH** was an employee and the Defendant was her employer covered by and within the meaning of the FCRA.

66.    **SMITH** was, and is, qualified for the positions that she held with the Defendant.

67.    **SMITH** has endured disparate treatment while employed with the Defendant, thereby altering the terms and conditions of her employment.

68.    The acts, failures to act, practices and policies of the Defendant set forth above constitute intentional discrimination on the basis of **SMITH**'s gender in violation of the FCRA.

69.    As a direct and proximate result of the violations of the FCRA as referenced and cited herein, **SMITH** has lost benefits and privileges of her employment and has been substantially and significantly injured in her career path.

70.    As a direct and proximate result of the violations of the FCRA as referenced and cited herein, and as a direct and proximate result of the prohibited acts perpetrated against her, **SMITH** is entitled to all relief necessary to make her whole as provided for under the FCRA.

71.    As a direct and proximate result of the Defendant's actions, **SMITH** has suffered damages, including but not limited to, a loss of employment opportunities, loss of past and future employment income and fringe benefits, humiliation, and non-economic damages for physical injuries, mental and emotional distress.

72.    **SMITH** has exhausted her administrative remedies and this count is timely brought.

**WHEREFORE**, Plaintiff requests trial by jury of all issues so triable as of right, and:

ii.    Back pay and all other benefits, perquisites and other compensation for employment which plaintiff would have received, plus interest, including but not limited to lost salary and bonuses;

iii.    Front pay, including raises, benefits, insurance costs, benefits costs, and retirement benefits;

iv.     Reimbursement of all expenses and financial losses Plaintiff has incurred as
        a result of Defendant's actions;

v.      Reasonable attorney's fees plus costs;

vi.     Compensatory damages, and;

vii.    Such other relief as this Court shall deem appropriate.

## COUNT III – VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964- RETALIATION

73.     Plaintiff incorporates by reference Paragraphs 1-11 and 36-52 of this
Complaint as though fully set forth below.

74.     **SMITH** is a female a person and, as such, is a member of a protected
class.

75.     At all material times, **SMITH** was an employee and the Defendant was
her employer covered by and within the meaning of Title VII of the Civil Rights Act
of 1963, 42 U.S.C §2000e.

76.     **SMITH** was qualified for the positions that she held with the Defendant.

77.     **SMITH** complained to the Defendant about the gender discrimination
and retaliation, and the Defendant clearly observed her growing discomfort
concerning the same.

78.     **SMITH**'s complaints constitute a protected activity because her
complaints were concerning an unlawful activity of the Defendant.

79.     Said protected activity was the proximate cause of the Defendant's
negative employment actions against **SMITH**.

14

80.   Instead of preventing said treatment, the Defendant retaliated against **SMITH**.

81.   The acts, failures to act, practices and policies of the Defendant set forth above constitute retaliation in violation of Section 703 of Title VII, 42 U.S.C. § 2000e-2.

82.   As a direct and proximate result of the violations of 42 U.S.C. § 2000e et seq., as referenced and cited herein, **SMITH** has lost all of the benefits and privileges of her employment and has been substantially and significantly injured in her career path.

83.   As a direct and proximate result of the violations of 42 U.S.C. § 2000e et seq., as referenced and cited herein, and as a direct and proximate result of the prohibited acts perpetrated against her, **SMITH** is entitled to all relief necessary to make her whole as provided for under 42 USC § 2000e et seq.

84.   As a direct and proximate result of the Defendant's actions, **SMITH** has suffered damages, including but not limited to, a loss of employment opportunities, loss of past and future employment income and fringe benefits, humiliation, and non-economic damages for physical injuries, mental and emotional distress.

85.   **SMITH** has exhausted her administrative remedies and this count is timely brought.

**WHEREFORE**, Plaintiff requests trial by jury of all issues so triable as of right, and:

15

Case 2:23-cv-00840-JES-KCD    Document 37-9    Filed 03/28/25    Page 23 of 43 PageID
943
Case 2:23-cv-00840-JES-KCD    Document 1-3    Filed 10/05/23    Page 16 of 20 PageID 16

    i.    Back pay and all other benefits, perquisites and other compensation for employment which plaintiff would have received, plus interest, including but not limited to lost salary and bonuses;

    ii.    Front pay, including raises, benefits, insurance costs, benefits costs, and retirement benefits;

    iii.    Reimbursement of all expenses and financial losses Plaintiff has incurred as a result of Defendant's actions;

    iv.    Reasonable attorney's fees plus costs;

    v.    Compensatory damages, and;

    vi.    Such other relief as this Court shall deem appropriate.

## COUNT IV – VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992- RETALIATION

86.    Plaintiff incorporates by reference Paragraphs 1-11 and 36-52 of this Complaint as though fully set forth below.

87.    **SMITH** is a female a person and, as such, is a member of a protected class.

88.    At all material times, **SMITH** was an employee and the Defendant was her employer covered by and within the meaning of the FCRA.

89.    **SMITH** was qualified for the positions that she held with the Defendant.

90.    **SMITH** complained to the Defendant about the gender discrimination and retaliation, and the Defendant clearly observed her growing discomfort concerning the same.

16

91.   **SMITH's** complaints constitute a protected activity because her complaints were concerning an unlawful activity of the Defendant.

92.   Said protected activity was the proximate cause of the Defendant's negative employment actions against **SMITH**.

93.   Instead of preventing said treatment, the Defendant retaliated against **SMITH**.

94.   The acts, failures to act, practices and policies of the Defendant set forth above constitute retaliation in violation of the FCRA.

95.   As a direct and proximate result of the violations of the FCRA, as referenced and cited herein, **SMITH** has lost all of the benefits and privileges of her employment and has been substantially and significantly injured in her career path.

96.   As a direct and proximate result of the violations of the FCRA, as referenced and cited herein, and as a direct and proximate result of the prohibited acts perpetrated against her, **SMITH** is entitled to all relief necessary to make her whole as provided for under the FCRA.

97.   As a direct and proximate result of the Defendant's actions, **SMITH** has suffered damages, including but not limited to, a loss of employment opportunities, loss of past and future employment income and fringe benefits, humiliation, and non-economic damages for physical injuries, mental and emotional distress.

98.   **SMITH** has exhausted her administrative remedies and this count is timely brought.

**WHEREFORE**, Plaintiff requests trial by jury of all issues so triable as of right, and:

i.     Back pay and all other benefits, perquisites and other compensation for employment which plaintiff would have received, plus interest, including but not limited to lost salary and bonuses;

ii.    Front pay, including raises, benefits, insurance costs, benefits costs, and retirement benefits;

iii.   Reimbursement of all expenses and financial losses Plaintiff has incurred as a result of Defendant's actions;

iv.    Reasonable attorney's fees plus costs;

v.     Compensatory damages, and;

vi.    Such other relief as this Court shall deem appropriate.

## <u>COUNT V – VIOLATION OF TITLE IX – RETALIATION</u>

99.    Plaintiff incorporates by reference Paragraphs 1-35 and 49-52 of this Complaint as though fully set forth below.

100.   **SMITH** is a female a person and, as such, is a member of a protected class.

101.   At all material times, **SMITH** was an employee and the Defendant was her employer.

102.   **SMITH** was qualified for the positions that she held with the Defendant.

18

103.    **SMITH** complained to the Defendant about its violations of Title IX, and the Defendant clearly observed her growing discomfort concerning the same.

104.    **SMITH**'s complaints constitute a protected activity because her complaints were concerning an unlawful activity of the Defendant.

105.    Said protected activity was the proximate cause of the Defendant's negative employment actions against **SMITH**.

106.    Instead of preventing said treatment, the Defendant retaliated against **SMITH**.

107.    The acts, failures to act, practices and policies of the Defendant set forth above constitute retaliation in violation of Title IX.

108.    As a direct and proximate result of the violations of Title IX, as referenced and cited herein, **SMITH** has lost all of the benefits and privileges of her employment and has been substantially and significantly injured in her career path.

109.    As a direct and proximate result of the violations of Title IX, as referenced and cited herein, and as a direct and proximate result of the prohibited acts perpetrated against her, **SMITH** is entitled to all relief necessary to make her whole as provided for under Title IX.

110.    As a direct and proximate result of the Defendant's actions, **SMITH** has suffered damages, including but not limited to, a loss of employment opportunities, loss of past and future employment income and fringe benefits, humiliation, and non-economic damages for physical injuries, mental and emotional distress.

**WHEREFORE**, Plaintiff requests trial by jury of all issues so triable as of right, and:

i.     Back pay and all other benefits, perquisites and other compensation for employment which plaintiff would have received, plus interest, including but not limited to lost salary and bonuses;

ii.    Front pay, including raises, benefits, insurance costs, benefits costs, and retirement benefits;

iii.   Reimbursement of all expenses and financial losses Plaintiff has incurred as a result of Defendant's actions;

iv.   Reasonable attorney's fees plus costs;

v.    Compensatory damages, and;

vi.   Such other relief as this Court shall deem appropriate.

## <u>DEMAND FOR JURY TRIAL</u>

The Plaintiff demands a jury trial under Federal Rule of Civil Procedure 38 on all issues triable of right by a jury in this action.

Respectfully submitted,

Dated: October 5, 2023     **/s/ Benjamin H. Yormak**
                              Benjamin H. Yormak
                              Florida Bar Number 71272
                              Lead Counsel for Plaintiff
                              Yormak Employment & Disability Law
                              27200 Riverview Center Blvd, Suite 109
                              Bonita Springs, Florida 34134
                              Telephone: (239) 985-9691
                              Fax: (239) 288-2534
                              Email: byormak@yormaklaw.com

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION



KELLI SMITH, an individual,

        Plaintiff,

v.

THE FLORIDA GULF COAST UNIVERSITY
BOARD OF TRUSTEES, a political subdivision
of the State of Florida,

        Defendant.

CIVIL ACTION

Case No.  2:23-cv-840-JES-KCD

Judge: John E. Steele

Mag. Judge:  Kyle C. Dudek

## PLAINTIFF'S INITIAL DISCLOSURES UNDER FRCP 26

**NOW COMES** the Plaintiff, by and through undersigned counsel, and

states the following for her Initial Disclosures under Fed.R.Civ.P. 26:

### 1) Name, Address, and Telephone Numbers of Individuals Likely to Have Discoverable Information;

The Plaintiff believes that the following individuals are likely to have

discoverable information that Plaintiff may use to support Plaintiff's claims or

defenses:

(1)    Ms. Kelli Smith, c/o Benjamin H. Yormak, Esq., 27200 Riverview Center Blvd., Suite 109, Bonita Springs, Florida 34134 (knowledge of all issues);

(2)    Employees and Former Employees of Defendant (all of whom have knowledge of Plaintiff's complaints, employment and separation,

and/or Defendant's misconduct, and number of employees employed by Defendant), including but not limited to:

    a.  Mike Martin;
    b.  Sara Stensrud;
    c.  David Vasquez;
    d.  Tracia Elliott;
    e.  Patrick Gallagher;
    f.  Smitty Rounsifer;
    g.  Sharlene Broadman;
    h.  Diania Tsenekos;
    i.  Dr. David Thomas;
    j.  James Slapp;
    k.  Anthony Rispoli;
    l.  Brian Jones;
    m. Gary Kuenzi;
    n.  Terry Targia;
    o.  Pat McGowan;
    p.  Sean Kittleson;
    q.  Tommie Page;
    r.  Joe Anderson;
    s.  Chris Palmer;
    t.  April Palmer;
    u.  William Winning;
    v.  William Horn;
    w. Christian Pineda;
    x.  Christine Hoffman;
    y.  James Bair;
    z.  Rob Shepherd;
    aa. Anthony Garcia;
    bb. John Harris;
    cc. Dianna Sandora;
    dd.       Amanda Hall;
    ee. Nicole Evans;
    ff.  Michael Miranda;
    gg. Kirsten Thompson;
    hh.       Heather MacQueen;
    ii.  Michele Kroffke;
    jj.  Precious Gunter;
    kk. Vee Leonard;

ll.  Monique McKay;

mm.      Candace McClaren;

nn.      Myles Kittleson;

oo. Todd Caraway;

pp.      Jessica Holmer;

qq. Brian Fisher;

rr. Bev Brown;

ss. Mitch Cordova;

tt.  Dan Hoover;

uu.      Records Custodian, Defendant;

vv. Employees past and present of Defendant;

(3)    Expert witnesses who have yet to be determined;

(4)    All witnesses listed on Defendant's Initial Disclosures;

(5)    All witnesses identified during discovery in the above-captioned matter; and

(6)    All witnesses listed on any Witness List filed by the Defendant.

## 2)  Copies of Documents Plaintiffs May Use to Support Claims or Defenses;

The Plaintiff may use the following documents to support Plaintiff's claims or defenses:

(1)    All documents contained in all personnel, disciplinary, and benefit files maintained by the Defendant on the Plaintiff;

(2)    All documents contained in the personnel files maintained by the Defendant on other employees which are relevant to any issues of material fact with respect to Plaintiff's claims;

(3)    Paystubs, benefit statements, work schedules, policies or other documents evidencing the hours worked and/or compensation and benefits received by the Plaintiff from the Defendant;

(4)    Affidavits that may be obtained by the Plaintiff directly from Defendant's non-management employees/volunteers or former employees/volunteers;

(5)    Plaintiff reserves the right to rely upon all documents produced by either party during the course of discovery; all documents identified by any witness during depositions; and all documents listed on the Exhibit List of either party.

## 3) Damage Computations; and

The precise amount of Plaintiff's damages is presently unknown and may continue to accrue. However, the Plaintiff reserves the right to modify and amend damage computation during the course of discovery. The Plaintiff seeks the damages below:

| Description | Amount |
|---|---|
| Lost Wages- $11,250/month x 41 months (estimated) | $461,250.00 |
| Noneconomic Damages | $300,000.00 (or statutory maximum) |
| Front Pay | $135,000.00 |
| Lost Benefits | TBD |
| Attorney's Fees and Costs<br> - EEOC/Pre-suit: $4,500.00<br> - Pleadings: $4,500.00<br> - Discovery: $19,250.00<br> - Trial: $48,500.00 | $76,750.00 |

## 4) Insurance Agreements.

The Plaintiff is not aware of any insurance policies that may be relied upon by any party to satisfy part or all of any judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy any judgment.

Dated: January 18, 2024

s/ Benjamin H. Yormak_____
Benjamin H. Yormak
Florida Bar Number 71272
Trial Counsel for Plaintiff
YORMAK EMPLOYMENT & DISABILITY LAW
27200 Riverview Center Blvd., Suite 109
Bonita Springs, Florida 34134
Telephone: (239) 985-9691
Fax: (239) 288-2534
Email: byormak@yormaklaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 18, 2024, I emailed the foregoing document to:

Frank E. Brown          fbrown@bgrplaw.com,   awhiteside@bgrplaw.com,
mmcleod@bgrplaw.com

Sacha Dyson            sdyson@bgrplaw.com,   Awhiteside@bgrplaw.com,
mmcleod@bgrplaw.com

s/ Benjamin H. Yormak_____
Benjamin H. Yormak

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

KELLI SMITH,

      Plaintiff,

v.          Case No.:  2:23-CV-840-JES-KCD

THE FLORIDA GULF COAST
UNIVERSITY BOARD OF TRUSTEES,

      Defendant.

_____/

### PLAINTIFF'S RESPONSE TO DEFENDANT'S FIRST REQUEST FOR PRODUCTION

      **NOW COMES**, the Plaintiff, **KELLI SMITH,** by and through her attorney,

and submits her response to Defendant's First Request for Production:

### Preliminary Statement

    Plaintiff responds to each of these Requests based upon information and
documentation available as of the date of the responses and reserves the right to
supplement and amend these responses.


                                 s/ Benjamin H. Yormak_____



EXHIBIT
85
11/2/25 Smith
PENGAD 800-631-6989

## THE DOCUMENTS TO BE PRODUCED

1. The documents that support your claim(s) that you engaged in legally protected acts as alleged in ¶¶ 77 and 78 of Count III of the Complaint, and ¶¶ 90 and 91 of Count IV of the Complaint. **Plaintiff has produced all documents responsive to this request which are in her possession, custody or control.**

2. The documents that support your claim(s) that you experienced gender-based discrimination in violation of Title VII of the Civil Rights Act, as alleged in ¶¶ 57 and 58 of Count I of the Complaint; and the Florida Civil Right Act, as alleged in ¶¶ 67 and 68 of Count II of the Complaint. **Plaintiff has produced all documents responsive to this request which are in her possession, custody or control.**

3. The documents that support your claim(s) that you were retaliated against in violation of Title VII of the Civil Rights Act, as alleged in ¶¶ 80 and 81 of Count III of the Complaint; the Florida Civil Right Act, as alleged in ¶¶ 93 and 94 of Count IV of the Complaint; and Title IX, as alleged in ¶¶ 106 and 107 of Count V of the Complaint. **Plaintiff has produced all documents responsive to this request which are in her possession, custody or control.**

4. The documents that support your claim(s) that Defendant was violating or failing to comply with the Clery Act during your employment with Defendant. **Plaintiff has produced all documents responsive to this request which are in her possession, custody or control.**

5. The documents that support your claim(s) that you communicated an opinion or contention during your employment that Defendant was not in compliance with the Clery Act. **Plaintiff has produced all documents responsive to this request which are in her possession, custody or control.**

6. The documents that support your claim(s) that Defendant was violating Title IX during your employment with Defendant. **Plaintiff has produced all documents responsive to this request which are in her possession, custody or control.**

7. The documents that support your claim(s) that you complained of violations of Title IX as alleged in ¶ 103 of the Complaint. **Plaintiff has produced all documents responsive to this request which are in her possession, custody or control.**

8. The documents reflecting or referencing the 2019 U.S. Department of Education review/audit referenced in ¶ 21 of the Complaint. **None in Plaintiff's possession, custody or control.**

9. The documents supporting your claim that "[i]n most instances, FGCU resident life staff was aware of these assaults but was not notifying the Clery Crime Collection Data Center" as alleged in paragraph 23 of the Complaint. **None in Plaintiff's possession, custody or control.**

10. The documents reflecting or referencing the meeting on November 19, 2021, referenced in ¶ 27 of the Complaint. **Plaintiff has produced all documents responsive to this request which are in her possession, custody or control.**

11. The documents reflecting the email sent on January 21, 2022, by referenced in ¶ 31 of the Complaint, including the documents sent in response. **Plaintiff has produced all documents responsive to this request which are in her possession, custody or control.**

12. The documents reflecting performance reviews (either oral or written, formal or informal) that you received during your employment with Defendant. **Plaintiff has produced all documents responsive to this request which are in her possession, custody or control.**

13. The documents that support your claim(s) that you have exhausted your administrative remedies and this action is timely brought as alleged in ¶ 62 of the Complaint. **Plaintiff has produced all documents responsive to this request which are in her possession, custody or control.**

14. The documents constituting any public records requests made by you to Defendant; all responses by Defendant to these requests; and the documents provided to you by Defendant in response to these requests. **Plaintiff has produced all documents responsive to this request which are in her possession, custody or control.**

15. The documents that purport to show the nature, type, and/or amount of damages, if any, or other harm you have allegedly sustained as a result of the allegations in your Amended Complaint. **Plaintiff has produced all documents responsive to this request which are in her possession, custody or control.**

16. To the extent not otherwise produced in response to the requests, the documents on which each computation of damages or request for other relief, as set forth in response to Defendant's First Set of Interrogatories to Plaintiff, is based, including documents demonstrating or supporting the nature and extent of injuries, damages allegedly suffered, or other relief sought in this action. **Plaintiff has produced all documents responsive to this request which are in her possession, custody or control.**

17. The medical records, including, but not limited to, any correspondence; the documents that reflect expenses incurred by you for treatment, diagnosis, or

consultation; and records, of the physicians (including medical doctors, doctors of osteopathy, chiropractors, or any other health care provider); hospitals, clinics, pharmacists or pharmacies; psychologists, psychiatrists, or other mental health counselors or professionals; ministers, counselors, or any other person with whom you consulted, from whom you sought treatment, or whom you contacted because of any physical or mental malady, infirmity, condition, or harm which you allege to have been caused by any act or omission of Defendant; relates to your alleged mental or physical health condition; or for which you otherwise contend Defendant is liable, including alleged emotional distress, mental anguish, or any other injuries arising out of or relating to the allegations in your Amended Complaint, or with whom you have discussed your physical, emotional, or mental condition during the past five (5) years. **None.**

18. The documents showing any health, vision, or dental plans you were eligible to participate in, including any eligibility through COBRA or your spouse, from February 10, 2023, to the present. **None in Plaintiff's possession, custody or control.**

19. If you are seeking compensation for medical expenses in this action, please produce the documents establishing those medical expenses. **Plaintiff has produced all documents responsive to this request which are in her possession, custody or control.**

20. The documents showing the date and/or amount of any withdrawals from any retirement, pension, or deferred compensation account from January 1, 2022, to the present. **Plaintiff has produced all documents responsive to this request which are in her possession, custody or control.**

21. The documents reflecting or referencing any communication or correspondence between you and any representative of any retirement, pension, or deferred compensation board or entity from January 1, 2022, to the present. **None in Plaintiff's possession, custody or control.**

22. The documents that reflect any income you received from January 1, 2024, to the present. **Plaintiff has produced all documents responsive to this request which are in her possession, custody or control.**

23. The federal, state, and local tax returns for the tax years 2020, 2021, 2022, and 2023, including all supporting schedules, worksheets, forms (including W-2 and/or 1099 forms). **Plaintiff objects to the production of documents that precede her employment with the Defendant. The request is overbroad, seeks records that are irrelevant and not reasonably calculated to lead to admissible evidence. Plaintiff has produced all documents responsive to this request, other than for tax year 2020, which are in her possession, custody or control.**

24. The documents that demonstrate, chronicle, reflect, or reference your attempts to secure employment or the employment actually obtained (other than with Defendant) during the period of January 1, 2022, to the present, including, but not limited to, all nonduplicate copies of your resume as well as any documents that you have prepared, received, transmitted, or relied on as part of your search for employment. **Plaintiff has produced all documents responsive to this request which are in her possession, custody or control.**

25. Copies of all discrimination charges or complaints, including, but not limited to, internal complaints with any employer or charges with any agency, you have filed against any employer (excluding Defendant) during the period of January 1, 2018, to the present. **None.**

26. Copies of all discrimination charges or complaints, including, but not limited to, internal complaints or charges with any agency, you have filed against Defendant. **Plaintiff has produced all documents responsive to this request which are in her possession, custody or control.**

27. To the extent not otherwise produced in response to these requests, the documents that show that Defendant took a materially or other adverse action against you. **Plaintiff has produced all documents responsive to this request which are in her possession, custody or control.**

28. To the extent not otherwise produced in response to these requests, the documents that show your treatment by the Defendant to have been motivated by an unlawful or improper reason. **Plaintiff has produced all documents responsive to this request which are in her possession, custody or control.**

29. All blog entries, postings, communications, screen shots, and/or page information posted by you or on your behalf since January 1, 2022, on any social networking sites or websites, including, but not limited to, Facebook, LinkedIn, Snapchat, Instagram, and or TikTok, or other social networking site (web-based or smartphone-based) related to the Defendant, or any official or employee of any, or regarding your employment and any acts or events arising from your employment, during the period of January 1, 2022, to the present. **None.**

30. Copies of the Facebook, LinkedIn, Snapchat, Instagram, and or TikTok, or other social networking site (web-based or smartphone-based) related to or regarding you, including, but not limited to, a complete copy of your profile as well as the data showing your connections or "friends," during the period of January 1, 2022, to the present. **Plaintiff has produced all documents responsive to this request which are in her possession, custody or control.**

31. Copies of any communication or correspondence to deactivate a social network service, subscription, or account from February 1, 2022, to the present. **None.**

32. Copies of any personal notes, recordings, photographs, videotapes, diaries, journals, calendars, chronology, or any other written documents that reflect your impressions about your employment with the Defendant. **None.**

33. The documents that reflect or reference communications or correspondence, including, but not limited to, e-mail messages, voicemail messages, phone calls, text messages, or other postings between you and Vee Leonard from January 1, 2021, to the present. **Plaintiff has produced all documents responsive to this request which are in her possession, custody or control.**

34. The documents that reflect or reference communications or correspondence, including, but not limited to, e-mail messages, voicemail messages, phone calls, text messages, or other postings between you and Sara Stensrud from January 1, 2021, to the present. **Plaintiff has produced all documents responsive to this request which are in her possession, custody or control.**

35. The documents that reflect or reference communications or correspondence, including, but not limited to, e-mail messages, voicemail messages, phone calls, text messages, or other postings between you and Michael Martin from January 1, 2021, to the present. **None.**

36. The documents that reflect or reference communications or correspondence, including, but not limited to, e-mail messages, voicemail messages, phone calls, text messages, or other postings between you and the "Clery compliance subject matter expert" as referenced in paragraph 30 of the complaint from January 1, 2021, to the present. **Plaintiff has produced all documents responsive to this request which are in her possession, custody or control.**

37. The documents that reflect or reference communications or correspondence, including, but not limited to, e-mail messages, voicemail messages, phone calls, text messages, or other postings between you and VP Vasquez from January 1, 2021, to the present. **Plaintiff has produced all documents responsive to this request which are in her possession, custody or control.**

38. The documents that reflect or reference communications or correspondence, including, but not limited to, e-mail messages, voicemail messages, phone calls, text messages, or other postings between you and Captain Rispoli from January 1, 2021, to the present. **Plaintiff has produced all documents responsive to this request which are in her possession, custody or control.**

39. The documents that reflect or reference communications or correspondence, including, but not limited to, e-mail messages, voicemail messages, phone calls, text messages, or other postings between you and Captain Slapp from January 1, 2021, to the present. **Plaintiff has produced all documents responsive to this request which are in her possession, custody or control.**

40. To the extent not otherwise produced in response to these requests, the documents reflecting communications or correspondence that you have sent to or received from Defendant or any employee (present or former) or purported representative of Defendant from January 1, 2022 to the present. **Plaintiff has produced all documents responsive to this request which are in her possession, custody or control.**

41. To the extent not otherwise produced in response to these requests, copies of any other witness statements, interviews, statements, telephone calls, voicemail messages, text messages, electronic messages using any service or website, affidavits, declarations, notes, and/or recordings (audio or video) supporting your claims asserted in the Complaint. **Plaintiff has produced all documents responsive to this request which are in her possession, custody or control.**

42. To the extent not otherwise produced in response to these requests, copies of any personal notes, recordings, blogs, journals, calendars, chronology, or timeline reflecting your impressions about your employment with Defendant or reflecting your injuries or the damages claimed in this action from January 1, 2021, to the present. **None.**

43. The documents that you have sent to or received from a federal, state, or county administrative agency, including, but not limited to, the United States Equal Employment Opportunity Commission, Social Security Administration, the Florida Commission on Human Relations, the United States Department of Labor, or the Florida Department of Commerce (f/k/a Florida Department of Economic Opportunity). **Plaintiff has produced all documents responsive to this request which are in her possession, custody or control.**

44. The documents that relate to any court or administrative proceeding (threatened or actual) to which you have been a party, witness, or otherwise involved (other than the instant action), including, but not limited to, any affidavits, declarations, and/or transcripts of depositions or testimony you gave in any such proceeding. **Plaintiff objects to this request as overbroad. Plaintiff was a law enforcement officer for 33 years and participated in many proceedings as part of her job. These documents would be irrelevant to this matter. With regard to Plaintiff's personal matters she has no documents responsive to this request which are in her possession, custody or control.**

45. The documents filed, received, provided, or sent by or to you in any court proceeding (civil, criminal, or bankruptcy), administrative proceeding, or internal investigation to which you have been a party, witness, or otherwise involved (other than this case), including, but not limited to, any affidavits, declarations, and/or transcripts of depositions or testimony you gave in any such proceeding. **Plaintiff objects to this request as overbroad. Plaintiff was a law enforcement officer for 33 years and participated in many proceedings as part of her job. These documents would be irrelevant to this matter. With regard to Plaintiff's personal matters there are no documents responsive to this request which are in her possession, custody or control.**

46. The documents you have received from or submitted to the Florida Department of Law Enforcement or the Criminal Justice Standards & Training Commission regarding any Florida license you hold, any complaints against you, or regarding any inquiry or investigation regarding your license or your professional fitness, since January 1, 2022. **Plaintiff has produced all documents responsive to this request which are in her possession, custody or control.**

47. To the extent not otherwise produced in response to these requests, the documents showing that Defendant acted with retaliatory motive. **Plaintiff has produced all documents responsive to this request which are in her possession, custody or control.**

48. To the extent not otherwise produced in response to these requests, the documents that show similarly situated individuals were treated differently than you. **Plaintiff has produced all documents responsive to this request which are in her possession, custody or control.**

49. To the extent not otherwise produced in response to these requests, the documents quoted, referenced, referred to, identified, or otherwise mentioned in responding to Defendant's First Set of Interrogatories to Plaintiff. **Plaintiff has produced all documents responsive to this request which are in her possession, custody or control.**

50. To the extent not otherwise produced in response to these requests, the documents quoted, referenced, referred to, identified, or otherwise mentioned in your disclosures made pursuant to Rule 26(a) of the Federal Rules of Civil Procedure. **None in Plaintiff's possession, custody or control.**

51. To the extent not otherwise produced in response to these requests, the documents quoted, referenced, referred to, identified, or otherwise mentioned in the Second Amended Complaint. **Plaintiff has produced all documents responsive to this request which are in her possession, custody or control.**

52. To the extent not otherwise produced in response to these requests, the documents created, maintained, or routinely kept by Defendant which you possess, specifically including, but not limited to, employment policies, attendance records, e-mail messages, job descriptions, and/or training records. **Plaintiff has produced all documents responsive to this request which are in her possession, custody or control.**

53. The documents supplied to or used by any expert you retained for this lawsuit. **None.**

54. To the extent not otherwise produced in response to these requests, the documents you intend to use, or may otherwise rely on, at any deposition, hearing, pretrial proceeding, or the trial or in response to, or in support of, a motion for summary judgment. **Plaintiff objects to this request; it is too early in the discovery process to be able to determine "documents you intend to use, or may otherwise rely on, at any deposition, hearing, pretrial proceeding, or the trial or in response to, or in support of, a motion for summary judgment." Plaintiff will adhere to the dates in the Case Management and Scheduling Order. Plaintiff has produced documents responsive to this request that she is currently in possession of.**

55. To the extent not otherwise produced in response to these requests, the documents reflecting or referencing communications or correspondence with any of the individuals identified in your disclosures made pursuant to Rule 26(a) or with individuals identified in response to Defendant's First Set of Interrogatories, including, but not limited to, any witness statements, affidavits, declarations, letters, e-mail, voice, or text messages, postings, or other statements made by any individual with knowledge of your claims or the facts underlying those claims. **Plaintiff has produced all documents responsive to this request which are in her possession, custody or control.**

56. To the extent not otherwise produced in response to the requests, the documents relating to or establishing your injuries as alleged in your Complaint. **Plaintiff has produced all documents responsive to this request which are in her possession, custody or control.**

57. To the extent not otherwise produced in response to these requests, the documents that support your claim that Defendant violated Title VII of the Civil Rights Act of 1964 ("Title VII") as alleged in the Complaint. **Plaintiff has produced all documents responsive to this request which are in her possession, custody or control.**

58. To the extent not otherwise produced in response to these requests, the documents that support your claim that Defendant violated Florida Civil Rights Act ("FCRA")

as alleged in the Complaint. **Plaintiff has produced all documents responsive to this request which are in her possession, custody or control.**

59. To the extent not otherwise produced in response to these requests, the documents that support your claim that Defendant violated Title IX as alleged in the Complaint. **Plaintiff has produced all documents responsive to this request which are in her possession, custody or control.**

60. To the extent not otherwise produced in response to these requests, the documents you have obtained from third parties to this litigation by public records request, freedom of information act request, subpoena, or any informal request. **Plaintiff has produced all documents responsive to this request which are in her possession, custody or control.**

61. The documents that reflect your agreement to compensate your attorney in this case as alleged in the Complaint. **Plaintiff objects as any award of attorney fees must be awarded by the Court and must be reasonable, as decided by the Court; consequently, a request for undersigned counsel's fee agreement(s) is irrelevant and not calculated to lead to the discovery of admissible information. Lastly, undersigned counsel's fee agreement(s) contain privileged information that if disclosed to the Defendant would improperly reveal Plaintiff's legal strategy and proprietary information thereby providing the Defendant an unfair advantage in the instant matter.**

## CERTIFICATE OF SERVICE

I hereby certify that on November 18, 2024, I delivered the foregoing document via electronic mail to:

SACHA DYSON
sdyson@bgrhlaw.com

FRANK E. BROWN
fbrown@bgrphlaw.com

arobbins@bgrhlaw.com
Awhiteside@bgrhlaw.com
mmcleod@bgrplaw.com
eserve@bgrhlaw.com

s/ Benjamin H. Yormak
Benjamin H. Yormak
Florida Bar Number 71272
Trial Counsel for Plaintiff
YORMAK EMPLOYMENT &
DISABILITY LAW
27200 Riverview Center Blvd., Ste. 109
Bonita Springs, Florida 34134
Telephone: (239) 985-9691
Fax: (239) 288-2534
Email: byormak@yormaklaw.com